## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CT-00033-SCT

*JACKIE DEAN*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*

### <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/1997 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT Q. WHITWELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARY MARGARET BOWERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 12/21/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/11/2001 |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. We granted certiorari to consider the question whether a claimant's rights were violated by the procedures employed by the Public Employees' Retirement System of Mississippi ("PERS") in determining his claim for disability retirement. We hold that the procedure used did not comport with the governing statutes. Accordingly, we affirm the Court of Appeals, albeit on a different rationale, and we reverse the judgment of the circuit court affirming the PERS order and remand for further proceedings consistent with this opinion.

### I.

¶2. Jackie Dean injured his back in 1994 while working as an employee in the park maintenance department of the City of Iuka. Dean underwent surgery, and his physicians subsequently diagnosed him to have a permanent partial disability. One of Dean's physicians recommended a more sedentary job assignment. Dean sought reassignment by the City, but the City was unable to offer him sedentary work. Dean was also unsuccessful in his efforts to find another employer who could offer him a sedentary job.

¶3. In July of 1995, Dean applied to PERS for permanent disability benefits. With his application, Dean submitted written statements of his physicians on PERS Form 7 ("Statement of Examining Physician"), and copies of Dean's medical record were attached to these statements. PERS notified Dean that its Medical Board had found "insufficient objective medical evidence" in his application to support a claim for benefits.

¶4. Dean notified PERS that he would appeal this denial. PERS informed Dean that its Medical Board recommended a medical examination by a physician of its choice. PERS further advised Dean that PERS had made an appointment for him with Dr. Rahul Vohra. Dean was told that PERS would pay $200 of Dr. Vohra's examination fee. It so happens that Dr. Vohra was also a member of the Medical Board of PERS.

¶5. Dr. Vohra saw Dean on January 23, 1996, and Dr. Vohra thereafter submitted an opinion that Dean's condition did not support the application for disability benefits. The full Medical Board concurred, and a second denial of Dean's application was issued. Dean was advised that he could appeal this decision to the PERS Board of Trustees.

¶6. Dean, through his attorney, requested an administrative hearing on his application, and he fortified his position by submitting additional favorable medical evaluations. By letter of July 30, 1996, PERS advised Dean that the Board of Trustees had recently established a five-person committee to serve as "Hearing Officers" in appeals of decisions regarding disability benefits. The letter explained that the committee would consist of two members of the Medical Board, two members of the PERS Board of Trustees, and one attorney.

¶7. On November 25, 1996, the Disability Appeals Committee conducted a hearing to review Dean's claim. Sitting on the committee were Dr. Vohra and Dr. Michael Winkelmann, members of the PERS Medical Board. Also sitting on the committee were two members of the PERS Board of Trustees, and an assistant attorney general acting as the presiding hearing officer. After testimony and documentary evidence were presented, the Disability Appeals Committee rendered its Proposed Statement of Facts, Conclusions of Law, and Recommendation of November 26, 1996. The committee found insufficient medical evidence to support Dean's claim, and recommended that the PERS Board of Trustees affirm its Medical Board's decision to deny disability benefits to Dean. The PERS Board of Trustees rendered an order which adopted the proposed statement of facts, conclusions of law and recommendation of its Disability Appeals Committee.

¶8. Dean appealed the adverse order of the Board of Trustees to the Hinds County Circuit Court. The circuit court employed the substantial evidence standard to affirm the decision of the administrative agency. The circuit court essentially rejected the argument that Dean was denied procedural due process because members of the Medical Board sat in review of their own recommendation as members of the Disability Appeals Committee.

¶9. The Court of Appeals, in reversing the circuit court's decision, found that a conflict of interest existed in the administrative process, and that Dean's constitutional rights of due process were violated as a result. The Court of Appeals reasoned that, by evaluating Dean and then sitting on the Medical Board and also on the Disability Appeals Committee, Drs. Vohra and Winkelmann were "sitting in judgment of their own conclusions." Presiding Judge Southwick, concurring in part and dissenting in part in a separate opinion joined by Chief Judge McMillin, found no due process error in the initial review of Dean's claim by the Medical Board. Judge Southwick determined, however, that reversal was necessary because Drs. Vohra and Winkelmann were by statute not eligible to sit on the Disability Appeals Committee. The Court of Appeals remanded the case with instructions to the circuit court to remand to PERS for a review consistent with its majority opinion.

¶10. Although we concur in the result reached by our intermediate appellate court, we have granted review

because the Court of Appeals has rendered an opinion which appears to conflict with prior opinions of this Court. M.R.A.P. 17(a)(1). Because the decisive issue at the Court of Appeals was the degree of due process which must be afforded by a state agency, we deem this case requires our decision. A determination of this appeal involves questions of law, and we review such questions de novo. *Radmann v. Truck Ins. Exch.*, 660 So.2d 975, 977 (Miss. 1995).

## II.

¶11. PERS has framed the issues as follows:

> I. WHETHER THE LAWS GOVERNING THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM PROVIDE THE MEDICAL BOARD THE AUTHORITY TO CONDUCT A MEDICAL EVALUATION OF A CLAIMANT PRIOR TO RENDERING A DECISION EITHER GRANTING OR DENYING DISABILITY BENEFITS; AND,
>
> II. WHETHER THE PRESENCE OF A MEDICAL BOARD MEMBER AT THE DISABILITY APPEALS COMMITTEE HEARING CREATES AN UNFAIR CONFLICT OF INTEREST IN VIOLATION OF DEAN'S RIGHTS OF DUE PROCESS.

## A.

¶12. Our review of decisions by administrative agencies is limited. We will reverse only when an agency's decision is (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the powers of the Board to make, or (4) in violation of a statutory or constitutional right of the complaining party. *Sprouse v. Mississippi Employment Sec. Comm'n*, 639 So.2d 901, 902 (Miss.1994).

¶13. This case turns on whether the PERS procedures violated Dean's statutory or constitutional rights. More specifically, the case turns on the involvement of two doctors, Vohra and Winklemann, in an administrative procedure which resulted in denial of disability benefits to Dean. The doctors were involved at two levels of the proceeding, first in the investigation and initial determination of the claim, and second as hearing officers to make a recommended decision concerning the claim.

¶14. Our rule of decisions is to abstain from ruling on a constitutional issue, unless necessary to a disposition of the case. *Johnson v. Memorial Hosp.*, 732 So.2d 864, 866 (Miss. 1998). Therefore, it is unnecessary to reach the constitutional issue of due process if Dean's statutory rights were violated. In determining the statutory rights of a complaining party, we will bear in mind that administrative agencies have only those powers expressly granted, or necessarily implied, within the four corners of the statutes under which the agency operates. *Clancy's Lawn Care & Landscaping, Inc. v. Mississippi State Bd. of Contractors*, 707 So.2d 1080, 1083 (Miss. 1997).

¶15. Given the foregoing principles, and especially considering that administrative agencies exist by grace of statute, we focus first on the relevant statutes which govern PERS and Dean's application. Specifically, we look to parts of Article 3 ("Additional State Retirement and Disability Benefits") of the Public Employees' Retirement Law of 1952, codified as Miss. Code Ann. §§ 25-11-101 *et seq*. (1999). These laws provide the following definitions:

Miss. Code Ann. § 25-11-103(h):

"Board" shall mean the board of trustees provided in Section 25-11-15 to administer the retirement system herein created.

Miss. Code Ann. § 25-11-103(p):

"Medical board" shall mean the board of physicians or any governmental or nongovernmental disability determination service designated by the board of trustees that is qualified to make disability determinations as provided for in Section 25-11-119.

¶16. The statutory powers of the Medical Board are as follows:

Medical board. The board may designate a medical board to be composed of three (3) physicians or may contract with another governmental agency or non-governmental disability determination service that is qualified to make disability determinations. If required, other physicians may be engaged to report on special cases. The medical board or other governmental or non-governmental disability determination service agency so designated shall arrange for, and pass upon, all medical examinations required under the provisions of this article; shall investigate all essential statements and certificates by or on behalf of a member in connection with an application for disability retirement; and shall report in writing to the board of trustees its conclusions and recommendations upon all the matters referred to it.

Miss. Code Ann. § 25-11-119(7).

¶17. Dean applied for disability benefits under Miss. Code Ann. § 25-11-114(6), which provides in part as follows:

Regardless of the number of years of creditable service upon the application of a member or employer, any active member who becomes disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty, provided the medical board or other designated governmental agency after a medical examination certifies that the member is mentally or physically incapacitated for the further performance of duty and such incapacity is likely to be permanent, may be retired by the board of trustees on the first of the month following the date of filing such application but in no event shall the retirement allowance commence before the termination of state service. . . .

¶18. The final statute of particular relevance is as follows:

(1) Any individual aggrieved by an administrative determination, including a determination of the medical board, relating to the eligibility for or payment of benefits, or the calculation of creditable service or other similar matters relating to the Public Employees' Retirement System or any other retirement system or program administered by the board, may request a hearing before a hearing officer designated by the board. Such hearings shall be conducted in accordance with rules and regulations adopted by the board and formal rules of evidence shall not apply. The hearing officer is authorized to administer oaths, hear testimony of witnesses and receive documentary and other evidence. After the hearing, the hearing officer shall certify the record to the board, which shall include the hearing officer's proposed statement of facts, conclusions of law and recommendation. The record may include a taped recording of the proceedings of the hearing in lieu of a transcribed copy of the proceedings. The board shall receive the record and make its determination based solely on matters

contained therein.

. . . .

(3) The board is authorized to appoint a committee of the board to serve as hearing officer or to employ or contract with qualified personnel to perform the duties of hearing officer and court reporter as may be necessary for conducting, recording and transcribing such hearings. The board may assess and collect fees to offset costs related to such hearings. Those fees shall be deposited to the credit of the Public Employees' Retirement System.

Miss. Code Ann. § 25-11-120.

### B.

¶19. We find no violation of the governing statutes on these facts, insofar as Dr. Vohra examined Dean and provided a diagnosis and recommendation, and then voted with his fellow members of the Medical Board in the initial administrative determination to deny Dean's application. The legislature has given the PERS Board of Trustees the authority to designate a Medical Board. The Medical Board is then charged by statute to arrange for and pass upon all required medical examinations. The Medical Board is also under a statutory duty to investigate all essential statements and certificates in connection with an application for disability retirement, and to report in writing to the board of trustees its conclusions and recommendations upon all the matters referred to it. The relevant statutes reveal a clear legislative intent to balance individual claims and rights with the costs of investigating and administering these claims and rights. An agency's interpretation of its governing law is entitled to deference, unless its interpretation is repugnant to the plain meaning or the "best reading" of the statutes. *Ricks v. Mississippi State Dep't of Health*, 719 So.2d 173, 179 (Miss. 1998); *Grant Ctr. Hosp. of Miss., Inc. v. Health Group of Jackson, Miss., Inc.*, 528 So.2d 804, 808 (Miss. 1988).

¶20. The PERS procedure for initial determination of Dean's claim is adequate insofar as it comports with the statutes, but the question of due process remains. A due process issue is analyzed in two steps. We first determine whether the State interfered with a liberty or property interest. If so, we then determine if the procedures attendant upon the deprivation were constitutionally sufficient. *Esco v. Blackmon*, 692 So.2d 74, 78 (Miss. 1997). Dean has a valuable property interest at stake, provided he meets the statutory prerequisites for disability benefits. Dean also has constitutional guarantees that he shall not be deprived of that property interest without due process of law. U.S. Const. Amend. XIV; Miss. Const. art. 3, §14.

¶21. Regarding the initial determination of Dean's claim by the Medical Board, the first due process issue is whether the Medical Board was biased by the fact that one of its members conducted a medical examination and made a recommendation. The second due process question is whether this procedure was a improper combination of investigative and adjudicative functions in the agency.

¶22. Due process guarantees neutrality on the part of those sitting in a judicial or semi-judicial capacity. *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S. Ct. 1665, 72 L.Ed. 2d 1 (1982). The PERS Medical Board conducts no hearings and does not act in a judicial capacity. Furthermore, we can reasonably assume that persons authorized to make administrative determinations regarding claims will act in the public interest.

¶23. This Court has rejected the proposition that administrative agencies cannot perform both investigative

and adjudicative functions in an adjudicative process. *McFadden v. Mississippi State Bd. of Med. Licensure*, 735 So.2d 145, 158 (Miss. 1999). Dr. Vohra made an examination of Dean, and participated in an administrative determination of Dean's claim with the other members of the Medical Board. The combination in the same individual of these nonadjudicative functions does not violate due process, provided the claimant's due process rights to a fair hearing before an impartial adjudicator are otherwise protected.

¶24. We therefore also find no failure to provide due process, insofar as Dr. Vohra examined Dean and provided a diagnosis and recommendation, and then voted with his fellow members of the Medical Board to deny Dean's application. Those procedures are supported by the same statutes which give rise to Dean's claim to benefits, and are justifiable by weighing the importance of Dean's interests against the risk of an erroneous decision and the costs of alternative procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

¶25. The denial of Dean's application by the Medical Board did not terminate Dean's administrative claim, however, and so our analysis does not end there. Being aggrieved by a determination of the Medical Board, Dean was entitled by statute to a hearing before a "hearing officer designated by the board." In lieu of a single hearing officer, the Board of Trustees is authorized to appoint either a "committee of the board to serve as hearing officer or to employ or contract with qualified personnel to perform the duties of hearing officer." Here, the Board of Trustees appointed two members of the Medical Board to sit and vote on the Disability Appeals Committee which PERS established as "Hearing Officers."

¶26. Whether a statute is ambiguous or not, the ultimate goal of this Court in interpreting a statute is to discern and give effect to legislative intent. *Anderson v. Lambert*, 494 So.2d 370, 372 (Miss.1986). While an agency's interpretation of its governing statutes is entitled to deference, there is no duty of deference where the agency's interpretation runs contrary to statutory or constitutional language. *Mississippi State Tax Comm'n v. Moselle Fuel Co.*, 568 So.2d 720 (Miss. 1990). We hold that no reasonable interpretation of Miss. Code Ann. § 25-11-120(3) and the relevant attendant statutes will allow the Board of Trustees to appoint a committee comprised partly of members of the Medical Board to sit as hearing officers in review of a decision by the Medical Board. It does not matter that the Board of Trustees is the final arbiter of the decision after the Disability Appeals Committee has made its recommendation.

¶27. Although we need not and do not decide this case on due process grounds, we believe the statutes reveal an intent to protect due process rights in this administrative process by affording the claimant the right to a fair hearing. Administrative proceedings should be conducted in a fair and impartial manner, free from any suspicion of prejudice or unfairness. *McFadden*, 735 So.2d at 158. The Federal Administrative Procedures Act, for example, prohibits employees of agencies from adjudicating matters which they have investigated or prosecuted. *See McGowan v. Mississippi State Oil & Gas Bd.*, 604 So.2d 312, 316 (Miss. 1992). There is a possibility that Dean's substantive rights were infringed by the failure of PERS to faithfully adhere to its governing statutes.

## C.

¶28. PERS argues that Dean failed to raise these issues at the administrative level. Dean clearly raised the issue of conflict of interest in his appeal to the circuit court. Administrative hearings are typically not governed by the same rules which apply in courts of law. *United Cement Co. v. Safe Air For the Envt., Inc.*, 558 So.2d 840, 842 (Miss. 1990). We reserve the right to consider an issue that was not raised

before an administrative agency where, as here, the facts are undisputed and the issue is one that would allow an erroneous application of a statute, and where failure to address such issue will result in a possible deprivation of substantive rights.

¶29. Finally, Dean believes there is not substantial evidence to support the PERS decision. He would have us reverse and render in his favor. We decline this invitation, because it is not within the usual purview of our authority to reweigh the facts of a case involving an administrative agency. *McFadden*, 735 So.2d at 152.

### III.

¶30. Having determined that PERS has failed to follow the statutes which govern its decision-making process, we reverse and remand this case to the circuit court with instructions to remand the case to PERS for further proceedings consistent with this decision.

¶31. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. WALLER AND DIAZ, JJ., NOT PARTICIPATING.**

McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶32. After undergoing extensive examinations by three doctors who diagnosed Jackie Dean ("Dean") as disabled, it took PERS' own medical representative, Dr. Rahul Vohra, only fifteen minutes to determine that Dean was fit to return to work. Ironically, Dr. Vohra was a member of both the Medical Review Board and the Disability Appeals Committee which reviewed his diagnosis. Dr. Vohra had a conflict of interest and the board violated Dean's constitutional right to due process by allowing him to sit in judgment of his own conclusions. Such is the equivalent of allowing a prosecutor in a criminal case to sit and vote with the jury. While I agree that the PERS order and the circuit court decision should be reversed, I see no logic in remanding this case to PERS if Dr. Vohra and Dr. Winkelmann are still allowed to sit on the review boards. Accordingly, I concur in part and dissent in part.

¶33. Dean suffered a bulging disc while working for the City of Iuka. He underwent lumbar discectomy and was considered by his neurosurgeon, Dr. Thomas Weems, who conducted the operation, to have a 16% permanent disability. Dean was also examined by Dr. James Varner, an orthopedic surgeon, who gave a second opinion related to Dean's back condition and concurred with Dr. Weem's evaluation, giving Dean a 15% permanent disability. Dr. Carl Welch, a general practitioner in Corinth, Mississippi, did an extensive medical examination lasting over five hours on Dean and found him unable to be gainfully employed. Dean even saw a psychologist/vocational rehabilitation expert in Tupelo, Mississippi, Dr. James Crowder, who conducted academic achievement and depression tests. Dr. Crowder concluded that Dean's low aptitude for academics and his low feelings of self-esteem due to unemployment made him 100% vocationally disabled in terms of reduced access to the labor market.

¶34. However, it took little time (less than an hour) for PERS' own medical representative, Dr. Vohra, to conclude that Dean was not disabled and could return to his previous level of activity. Dr. Vohra clearly had a conflict of interest as he, along with his partner Dr. Winkelmann, sat on both the Medical Review Board and the Disability Appeals Committee in violation of Dean's due process rights.

¶35. Both the United States and Mississippi Constitutions guarantee the right to due process of law before an administrative agency. U.S. Const. amend. XIV; Miss. Const. art. 3, § 14. Administrative proceedings must be "conducted in a fair and impartial manner, free from any just suspicion or prejudice, unfairness, fraud, or oppression." *Mississippi State Bd. of Health v. Johnson*, 197 Miss. 417, 427, 19 So.2d 445, 447 (1944). By examining Dean and then sitting on the Medical Review Board as well as on the Disability Appeals Committee, Dr. Vohra and Dr. Winkelmann were allowed to review their own decisions. As a result, Dean was certainly prejudiced in his attempt to recover PERS benefits.

¶36. There was also impropriety resulting in Dr. Vohra and Dr. Winkelman sitting on the appeals committee, as they were not also members of the Board of Trustees, as required by state statute. See Miss. Code Ann. § 25-11-120 (3) & § 25-11-103(h). State statute provides that members of the medical board cannot sit on the appeals committee, as only members of the Board of Trustees enjoy that right.

¶37. While this Court has not ruled directly on this issue before as it relates to a medical board distributing disability benefits to public employees, this State has long recognized that conflicts of interest and the appearance of impropriety in school boards is unethical and such board's vote can be reversed by a higher court. Miss. Code Ann. § 25-4-105(2) (1999) provides in pertinent part that "[n]o public servant shall be interested, directly or indirectly, during the term for which he shall have been chosen, or within one (1) year after the expiration of such term, in any contract with the State or any district, county, city or town thereof, authorized by any law passed or order made by a board which he may be or may have been a member." As public servants, Drs. Vohra and Winkelmann should not have been allowed to review their own decision.

¶38. In both cases in which Dr. Vohra's diagnosis was reviewed there was an absence of a neutral decision-making body. There was no chance that Dr. Vohra and Dr. Winkelmann would undermine their own professional reputation as medical doctors by delivering a 0% disability to Dean and then soon thereafter accepting the professional opinion of another doctor over theirs. Such an action would impugn the credibility of their judgment and their reputation as doctors. The board and the circuit court erred in not finding that substantial evidence was presented in proof of Dean's disability and that Drs. Vohra's and Winkelmann's interests were too closely connected to avoid a conflict. This Court should find that a conflict of interest existed, reverse the PERS order, and allow for a new hearing without the participation by Dr. Vohra or Dr. Winkelmann.[1]

¶39. Accordingly, I concur in part and dissent in part.

1. The examination conducted by Dr. Vohra may be considered by the board and he may act as a witness, but he should not be allowed to sit on the board and have any role in the decision-making process.