# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-SA-01515-SCT

*JOHN P. FREEMAN*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 8/24/2000 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | MARY MARGARET BOWERS |
| NATURE OF THE CASE: | STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 07/18/2002 |
| MOTION FOR REHEARING FILED: | 02/26/2002 |
| MANDATE ISSUED: | 8/8/2002 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinions are withdrawn, and this opinion is substituted therefor.

¶2. John P. Freeman (Freeman) was granted disability benefits by the Public Employees' Retirement System (PERS) in 1993, on the basis of chronic fatigue syndrome/dysthymic depression. On March 19, 1998, the PERS Medical Review Board voted to discontinue his benefits. Freeman appealed, and after a hearing, the PERS Disability Appeals Committee recommended termination of his benefits. The PERS Board of Trustees adopted the Disability Appeals Committee's Proposed Statement of Facts, Conclusions of Law, and Recommendations, and terminated Freeman's benefits by order dated August 24, 1999. Freeman then appealed to the Hinds County Circuit Court, First Judicial District, which affirmed the order of the Board.

¶3. Aggrieved, Freeman filed his timely notice of appeal raising the following issues:

**I. THE CIRCUIT COURT ERRED IN RULING THAT FREEMAN HAD "FAILED TO SHOW THAT THERE WAS NOT SUBSTANTIAL EVIDENCE" TO UPHOLD THE DECISION OF PERS TERMINATING HIS DISABILITY BENEFITS.**

**II. ALTERNATIVELY, FREEMAN SHOULD BE GRANTED A NEW HEARING BECAUSE PERS WRONGFULLY PLACED THE BURDEN OF PROVING CONTINUING DISABILITY UPON FREEMAN.**

**III. ALTERNATIVELY, FREEMAN SHOULD BE GRANTED A NEW HEARING BECAUSE DR. DAVID DUDDLESTON EXAMINED FREEMAN AT HIS INITIAL DETERMINATION OF DISABILITY AND THUS HAD A CONFLICT OF INTEREST FROM SERVING ON THE DISABILITY APPEALS COMMITTEE THAT TERMINATED HIS BENEFITS.**

**IV. ALTERNATIVELY, FREEMAN SHOULD BE GRANTED A NEW HEARING BECAUSE PERS ADMITTED THAT DR. WINKELMANN SERVED ON THE PERS MEDICAL BOARD IN FREEMAN'S CASE AND THEN AGAIN ON THE PERS DISABILITY APPEALS COMMITTEE IN VIOLATION OF RECENT DECISIONS OF THIS COURT**.

Concluding that the decision to terminate Freeman's disability benefits was error, we reverse and remand with instructions.

## <u>FACTS</u>

¶4. John P. Freeman worked for the Mississippi Department of Human Services as a teacher for sixteen and one half years. He terminated his employment in October 1992, and applied for disability benefits July 20, 1993. In support of his application, Freeman produced documentation from three physicians. Infectious disease specialist Dr. R.H. Flowers, III wrote that Freeman "is disabled due to chronic fatigue syndrome" and "has not been able to work since October 31, 1992." Attached to that letter were medical reports covering 1990-1992. Orthopaedic surgeon Ward McCraney's Statement of Examining Physician dated November 9, 1992, concluded that Freeman was "permanently disabled" due to "chronic degenerative disc disease." Internist Dwight S. Keady examined Freeman on December 14, 1992, and reported that Freeman suffered from "chronic fatigue syndrome" and "degenerative arthritis of the lumbar spine."

¶5. PERS conducted its own examination of Freeman through Dr. David Duddleston, who reported that it was his "opinion that Mr. Freeman is disabled due to chronic fatigue syndrome or dysthymic depression" and "should be approved for disability." PERS granted Freeman disability benefits effective August 1, 1993.

¶6. Pursuant to Miss. Code Ann. § 25-11-113(3), the Medical Review Board may require Freeman to undergo an annual medical examination for the first five years following retirement, and every three years thereafter, until age 60. In January of 1998, almost 5 years after PERS granted disability benefits, Freeman was ordered by PERS to be evaluated by psychiatrist Dr. Aamir Raza, and subsequently Dr. Raza reported that Freeman had "no reason for disability secondary to psychological reasons." However, Dr. Raza further stated, "[t]he patient is presently on disability secondary to chronic fatigue syndrome. I recommend the patient undergo a medical evaluation to determine that." However, the Medical Review Board, reviewing all medical records again in March 1998, disregarded Dr. Raza's recommendation, and also disregarded Dr.

Flowers's June 27, 1997 Statement of Re-examining Physician (PERS form 7a*)* and voted to discontinue Freeman's benefits.

¶7. Freeman appealed, and a hearing was held before the Disability Appeals Committee on November 23, 1998. At that hearing, attended by his attorney but not Freeman himself, the decision was "deferred pending receipt of medical records from Dr. Flowers for the years 1994 to present." The hearing was reconvened on June 14, 1999, and neither Freeman nor his attorney attended. The hearing was reconvened two weeks later, and again no one representing Freeman attended. At the time of the decision of the Committee on June 28, 1999, apparently the only post-retirement medical evidence of record consisted of: (a) Dr. Raza's January 1998 evaluation, (b) Dr. Flowers's June 1997 statement of re-examination mentioned *supra*, (c) an additional letter from Dr. Flowers dated May 27, 1998, stating that Freeman "is totally disabled" and "has not improved over the past six years," and (d) a letter from Dr. Stanford Owen, dated June 16, 1999, which read, "I strongly feel that Mr. Freeman is severely and completely disabled by this condition and will continue to be so in the foreseeable future." Notwithstanding this evidence of continuing disability,[1] the Committee stated that Freeman "has presented no evidence of his medical condition since 1994" and recommended that Freeman's benefits be terminated. The PERS Board of Trustees adopted the recommendations of the Medical Board and Disability Committee and terminated Freeman's disability retirement.

## STANDARD OF REVIEW

¶8. "This Court's standard of review of an administrative agency's findings and decisions is well established."***Byrd v. PERS***, 774 So.2d 434, 437 (Miss. 2000). "An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights."***Id.*** (citing ***Sprouse v. Mississippi Employment Sec. Comm'n***, 639 So.2d 901, 902 (Miss. 1994) ).

## DISCUSSION

### I. DID THE CIRCUIT COURT ERR IN RULING THAT FREEMAN HAD "FAILED TO SHOW THAT THERE WAS NOT SUBSTANTIAL EVIDENCE" TO UPHOLD THE DECISION OF PERS TERMINATING HIS DISABILITY BENEFITS?

¶9. "This Court may neither substitute its own judgment for that of the agency which rendered the decision, nor reweigh the facts of the case." ***Byrd,*** 774 So.2d at 437 (citing ***Mississippi Pub. Serv. Comm'n v. Merchants Truck Lines***, ***Inc.***, 598 So. 2d 778, 782 (Miss. 1992)). "This Court gives due deference to the factual findings of the administrative agency and to the trial judge who adopts those same findings." ***Id.*** (citing ***State Farm Ins. Co. v. Gay***, 526 So.2d 534, 535 (Miss. 1998)).

¶10. The Board of Trustees concluded that there was insufficient evidence to show that Freeman was unable to return to his former employment and that he was disabled. On appeal, the circuit court affirmed the Board of Trustees' decision, finding that Freeman "had failed to show that there was not substantial evidence to support the Board's decision" and that "the decision of the Board and the Disability Appeals Committee cannot be viewed as arbitrary and capricious." We disagree.

¶11. While it is true that this Court gives deference to administrative agency's factual determinations, this

Court will not give deference where the record shows those determinations were not supported by substantial evidence. PERS made its determination that Freeman was no longer disabled although it had before it statements to the contrary from Dr. Flowers and Dr. Owen and the statement of PERS physician Dr. Raza, who said only that Freeman was not **psychologically** disabled and, noting that Freeman's disability was for chronic fatigue syndrome, recommended further medical evaluation.

¶12. This Court was recently faced with a case on point where a disabled retiree had similarly had her disability benefits terminated. *Fulce v. PERS*, 759 So.2d 401, 404 (Miss. 2000). The only evidence before PERS was Mrs. Fulce's Statement of Reexamination by Physician, from the previous two years. *Id.* This Court held:

> Based on the lack of sufficient medical information in the record .... we are unable to determine whether the decision of PERS was supported by substantial evidence. Accordingly, we remand this matter back to PERS, so that it may reconsider Mrs. Fulce's present condition once she has been thoroughly re-examined by the appropriate medical personnel.

*Id.* at 405.

¶13. In the case sub judice, the factual determination that Freeman is no longer disabled is not supported by substantial evidence. In fact, it is not supported by any evidence. The only report that arguably could support PERS' factual determination is Dr. Raza's report, which states that Freeman is not psychologically disabled. However, Freeman was not disabled due to psychological reasons; he was disabled due to chronic fatigue syndrome, a physical ailment. What is even more troubling is that same report PERS relied upon for its determination that Freeman was no longer disabled, recommended that Freeman undergo a medical evaluation to determine whether he is still disabled due to chronic fatigue syndrome. It does not appear that PERS adhered to its own doctor's recommendation, as the record contains no indicatation that Freeman was notified that he must have a medical evaluation subsequent to his evaluation by Dr. Raza. Nor is there anything in the record to indicate that Freeman was ever advised that the letter which he obtained from his treating physician, Dr. Flowers, subsequent to Dr. Raza's evaluation, was not acceptable as a medical evaluation.

¶14. There are two years, 1995 and 1996, in which no documentation of a medical evaluation of Freeman is shown in the record. But neither is there any documentation that he was requested to undergo medical examinations and refused. The same statute that provides the procedure for initial application for disability retirement by public employees also provides the procedure for reexamination of disabled retirees:

> once each year during the first five (5) years following retirement of a member on a disability retirement allowance, and once in every period of three (3) years thereafter, the board of trustees **may**, and upon his application shall, **require any disability retiree who has not yet attained the age of sixty (60) years . . . to undergo a medical examination** . . . The board, however, in its discretion, may authorize the medical board to establish reexamination schedules appropriate to the medical condition of individual disability retirees. Should any disability retiree . . . refuse to submit to any medical examination provided herein, his allowance may be discontinued until his withdrawal of such refusal; and should his refusal continue for one (1) year, all his rights to a disability benefit shall be revoked by the board of trustees.

Miss. Code Ann. § 25-11-113(3) (1999) (emphasis added).

¶15. The statute provides for a clear method for compelling compliance, through first suspension and later revocation of benefits. It does not appear from the record that PERS followed the statutorily mandated procedure. Instead, PERS ordered Freeman to be examined by a psychiatrist, even though he was on disability for a physical disorder. When the psychiatrist reported that Freeman was not psychologically disabled, PERS declared him no longer disabled. This decision was obviously not supported by substantial evidence.

### II. SHOULD FREEMAN BE GRANTED A NEW HEARING BECAUSE PERS WRONGFULLY PLACED THE BURDEN OF PROVING CONTINUING DISABILITY UPON FREEMAN?

¶16. A claimant "has the burden of proving to the medical board and to the Appeals Committee that she is in fact disabled," in an initial application for disability benefits. *PERS v. Dishmon*, 797 So.2d 888, 893. "There is a rebuttable presumption in favor of the action of an administrative agency and the burden of proof is on the one challenging its action." *Fulce*, 759 So.2d at 404.

¶17. Freeman claims that this Court has never spoken concerning who has the burden of proof in a PERS **disability termination** case. Freeman further asserts that "since PERS is acting in an adjudicative capacity it is bound by principles of res judicata as to facts that have already been decided by that body in a particular case." PERS responds by noting that the cases cited by Freeman for authority were zoning decisions and, thus, clearly distinguishable.

¶18. A plain reading of the statute indicates that a determination of disability by PERS cannot be res judicata. Clearly the Legislature did not intend that a determination of disability is permanent. It provided for reevaluation on a yearly basis for the first five years, and every three years thereafter. Miss. Code Ann. § 25-11-113(3) (1999).

¶19. Recently this Court has affirmatively stated that the burden is on the claimant to **initially** prove disability to the Medical Review Board and the Disability Appeals Committee. However, this Court has not previously addressed the question of who bears the burden of proving **continuing disability**. The disabled retiree must undergo medical examinations as requested by the Board, pursuant to Miss. Code Ann. § 25-11-113(3) (1999), to continue to receive disability benefits. However, because the statutory language is permissive, not mandatory, PERS must not only properly notify the disabled retiree when such medical examinations are required, but also specify what information must be included in the report of the examinations.[2]

### III. SHOULD FREEMAN BE GRANTED A NEW HEARING BECAUSE DR. DAVID DUDDLESTON EXAMINED FREEMAN AT HIS INITIAL DETERMINATION OF DISABILITY AND THUS HAD A CONFLICT OF INTEREST FROM SERVING ON THE DISABILITY APPEALS COMMITTEE THAT TERMINATED HIS BENEFITS?

¶20. In 1993, Dr. Duddleston performed a physical examination on Freeman at the behest of PERS. In his report, Dr. Duddleston opined that Freeman was disabled due to chronic fatigue syndrome or dysthymic depression. Freeman was subsequently found to be disabled by PERS. This same Dr. Duddleston was on the Disability Appeals Committee that recommended his benefits be terminated five years later. Freeman claims this created a conflict of interest from which Dr. Duddleston should have recused himself. Freeman further claims that Dr. Duddleston's participation with the Disability Appeals Committee denied him his

constitutional protection of due process of law before an administrative agency, as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article 3, § 14 of the Mississippi Constitution.

¶21. "Administrative proceedings should be conducted in a fair and impartial manner, free from any suspicion of prejudice or unfairness." ***Dean v. PERS***, 797 So.2d 830, 837 (Miss. 2000)(citing ***McFadden v. Mississippi Bd. of Med. Licensure***, 735 So.2d.145, 158 (Miss. 1999)). "Due process guarantees neutrality on the part of those sitting in a judicial or semi-judicial capacity." ***Id***. at 836 (citing ***Schweiker v. McClure***, 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed. 2d 1 (1982)).

¶22. Still, "[t]his Court has rejected the proposition that administrative agencies cannot perform both investigative and adjudicative functions." ***Id***. (citing ***McFadden***, 735 So. 2d at 158). "The combination in the same individual of . . . nonadjudicative functions does not violate due process, provided the claimant's due process rights to a fair hearing before an impartial adjudicator are otherwise protected." ***Id.*** However:

> no reasonable interpretation ... [of the statute] will allow the Board of Trustees to appoint a committee comprised partly of members of the Medical Board to sit as hearing officers in review of a decision by the Medical Board. It does not matter that the Board of Trustees is the final arbiter of the decision after the Disability Appeals Committee has made its recommendation.

***Id.*** at 836.

¶23. PERS responds to Freeman's conflict of interest argument by saying, "one would think that Mr. Freeman would find it comforting that a person who found him disabled in 1993 and recommended that he receive disability benefits . . . [is] on a 1998 committee examining whether those benefits should continue." We believe PERS misses the point. The fact that a member of an adjudicative body might be biased or partial is enough to taint the proceeding. It is irrelevant to which side that bias might extend. While administrative agencies may perform both investigative and adjudicative functions, those functions cannot be performed by the same person. When Dr. Duddleston examined Freeman in 1993 and recommended him for disability benefits, he was effectively performing an investigative function. Therefore, he should have recused himself from subsequently serving on the Disability Appeals Committee, in an adjudicative capacity, reviewing the termination of Freeman's benefits.

¶24. Although we affirmatively state that Freeman was denied due process, as afforded by the statute itself, we decline to address the constitutional due process issue. "Our rule is to abstain from ruling on a constitutional issue, unless necessary to a disposition of the case." ***Dean***, 797 So.2d at 833.

### IV. SHOULD FREEMAN BE GRANTED A NEW HEARING BECAUSE PERS ADMITTED THAT DR. WINKELMANN SERVED ON THE PERS MEDICAL BOARD IN FREEMAN'S CASE AND THEN AGAIN ON THE PERS DISABILITY APPEALS COMMITTEE IN VIOLATION OF RECENT DECISIONS OF THIS COURT?

¶25. Freeman cites three recent decisions of this Court in support of this assignment of error.[3] PERS argues that: (1) there was no evidence that actual bias existed; (2) while Dr. Winkelmann was at the hearing, he was not a voting member, therefore, Freeman was not denied due process; and (3) Freeman did not object at the hearing, thus waiving this issue for purposes of appeal.

¶26. A recent case on point involved this same Dr. Winkelmann and the same issue. The only material

difference in the cases was that the prior case involved an initial determination of disability and not a termination of benefits hearing, as the case sub judice. This Court held:

> Here, it appears that Dishmon's statutory guarantees of due process have been violated by virtue of Dr. Winkelmann sitting in judgment of his own conclusion that Dishmon is not entitled to disability benefits. Dr. Winkelmann was a member of the Medical Review Board that originally denied Dishmon's claim. He also sat on the Disability Appeals Committee. Dr. Winkelmann was essentially reviewing his own disability benefit decision, and there are serious possibilities that Dishmon has been prejudiced by the denial of her claim. The conflict of interest here is the same as in *Dean*, *Byrd*, *Flowers*, and *Burns*, and casts serious doubts on the integrity of the process by which PERS reviews its disability claims.

*Dishmon,* 797 So.2d at 897.

¶27. In another recent decision, again Dr. Winkelmann's participation on the Disability Appeals Committee was at issue. This Court held: "Notwithstanding that he did not actually vote on Byrd's appeal, under this Court's holding in *Dean*, Dr. Winkelmann's presence on the Appeals Committee, and his participation in Byrd's hearing, was not allowed by the statutes which govern PERS." *Byrd*, 774 So. 2d at 441.

¶28. In the past year this Court has made a firm and clear statement that a person who serves on the Medical Review Board which determines disability cannot later serve on the Disability Appeals Committee that reviews that decision. It does not matter whether that person is a voting member or not. This Court has found this practice by PERS rises to the level of plain error. "This Court only addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the defendant." *Dishmon*, 797 So.2d at 897. Not only had Dishmon failed to object to Dr. Winkelmann's presence on the Disability Appeals Committee at the time of the hearing, but Dishmon also failed to raise it as an assignment of error on appeal to this Court. *Id.* However, on our own initiative, we found that "it should be considered as grounds for reversal based on plain error." 797 So.2d at 891. There we reversed and remanded to the circuit court "with instructions to remand to PERS for a fair and impartial review of Dishmon's disability claim."*Id*. at 897.

## CONCLUSION

¶29. The PERS decision to terminate Freeman's disability benefits was not supported by substantial evidence. Freeman was not properly afforded the opportunity to show his continuing disability, due to the lack of proper notice and implementation by PERS of the statutory procedures. PERS violated Freeman's statutorily protected right to due process by both Dr. Duddleston and Dr. Winkelmann sitting in judgment as members of the Disability Appeals Committee, of their own prior decisions.

¶30. For these reasons, the judgments of the circuit court and PERS are reversed, and this case is remanded to the circuit court with instructions to remand to PERS for reinstatement of Freeman's disability status and his benefits, with back pay from the date of the termination of those benefits. In accordance with Section 25-11-113(3) and this opinion, PERS, at its option, may conduct a new, fair and impartial hearing evaluating Freeman's disability after he has been thoroughly examined by appropriate medical personnel.

¶31. **REVERSED AND REMANDED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY, CARLSON**

**AND GRAVES, JJ., CONCUR.**

1. It appears that the Committee only considered "treatment records" to be deemed "evidence," although based on the record before this Court, there is no indication that Freeman was ever advised that neither letters from physicians, nor even a PERS form 7a Statement of Re-Examination by Physician would be considered evidence.

2. If the information currently requested on the PERS Form 7a, Statement of Re-Examination by Physician, is not sufficient to be considered by PERS to be evidence of a medical examination, then the form should be revised.

3. See *PERS v. Dishmon*, 797 So.2d 888 (Miss. 2001); *Dean v. PERS*, 797 So.2d 830 (Miss. 2000); *Byrd v. PERS*, 774 So. 2d 434 (Miss. 2000).