952 So.2d 972 (2006)
Patricia FLOWERS, Appellant,
v.
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellee.
No. 2005-CC-00198-COA.
Court of Appeals of Mississippi.
October 24, 2006.
*974 George S. Luter, attorney for appellant.
Mary Margaret Bowers, attorney for Appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING[1]
SOUTHWICK, J., for the Court.
¶ 1. The Public Employees Retirement System Board of Trustees (PERS) determined that Patricia Flowers was not suffering from a disability that would entitle her to retirement benefits. Flowers has filed procedurally proper appeals which today cause her issues to be resolved by this Court. Her principal argument is that the evidence of disability is both overwhelming and all but undisputed. We disagree with that characterization of the record. Instead, we find the PERS decision to be within the discretion for the administrative agency which is entrusted with the public employee disability retirement benefit program. Accordingly, we affirm.
¶ 2. Since the issues raised on appeal relate solely to the facts of the claim, we integrate the discussion of the evidence *975 with our analysis of the applicable legal principles.

PROCEDURAL BACKGROUND
¶ 3. Flowers was discharged from her employment at Hinds County Community College on May 25, 1994. Her initial claim for disability was filed on June 1, 1994. On September 7, 1994, Flowers was informed by PERS that her claim had been denied. She was notified that she had sixty days to reopen her application but was not informed of any rights regarding an appeal. Flowers took no further action on that application.
¶ 4. Almost simultaneously with her filing the application with the state employee retirement benefits agency, Flowers filed on May 31, 1994, for disability with the United States Social Security Administration (SSA). On October 26, 1995, an administrative law judge determined that she was disabled and entitled to benefits under the Social Security Act. There are documents in the record that her entitlement to federal benefits began in November 1994; starting in January 1996 she was being paid $603 each month. The effect of the SSA determination will be discussed later.
¶ 5. After receiving the favorable SSA ruling, Flowers again filed with PERS on December 7, 1995. The PERS Medical Board denied her claim for disability benefits; the PERS Disability Appeals Committee also recommended denial. The PERS Board of Trustees accepted the recommendation. After the first level judicial review upheld the denial, this Court reversed and remanded for further review for reasons that will be explained later. Flowers v. Pub. Emp. Ret. Sys., 748 So.2d 178 (Miss.Ct.App.1999).
¶ 6. On remand, the PERS Disability Appeals Committee conducted a hearing on May 12, 2001, at which Flowers appeared with counsel. Records from the prior proceedings and additional medical records were introduced. Flowers testified and so did one doctor on her behalf. The Committee prepared findings, legal conclusions, and a recommendation that Flowers be found not to be disabled at the time that she left her employment with Hinds Community College in 1994. This recommendation was accepted by the PERS Board of Trustees on October 23, 2001.
¶ 7. The first level of appeal from PERS was to the Hinds County Circuit Court. The court affirmed the PERS decision on January 18, 2005. Flowers' appeal to the Supreme Court has been deflected to this Court.

DISCUSSION
A. Prior Court of Appeals Decisions
¶ 8. On April 20, 1999, this Court issued its initial opinions regarding Flowers' claim and in two other closely related appeals from the Public Employees' Retirement System. Flowers v. Pub. Emp. Ret. Sys., 748 So.2d 178 (Miss.Ct.App. 1999) (op. on reh.); Burns v. Pub. Emp. Ret. Sys., 748 So.2d 181 (Miss.Ct.App. 1999) (op. on reh.); and Dean v. Pub. Emp. Ret. Sys., 98-CC-00033-COA (Miss. Ct.App. Apr. 20, 1999), rev'd 797 So.2d 830 (Miss.2000). All three addressed whether two doctors who were members of the Medical Review Board at PERS should personally exam a claimant, have their examinations used as evidence, then vote on the Board's decision of whether a disability existed. Each appeal also presented the issue of whether those same two doctors could later serve on the Disability Appeals Committee that reviewed the initial disability decision.
¶ 9. In all three decisions, we found an "unfair conflict of interest" in both of those aspects of the PERS procedure:

*976 [a claimant's] constitutional guarantees of due process have been violated by virtue of Drs. Vohra and Winkelmann sitting in judgment of their own conclusions that [a claimant] was not entitled to disability benefits. The conflict of interest at issue in this case casts serious doubts on the integrity of the process by which PERS reviews its disability claims. By evaluating [a claimant] and then sitting on the Medical Review Board as well as on the Disability Appeals Committee, Drs. Vohra and Winkelmann were essentially reviewing their own disability benefit decisions.
Flowers, 748 So.2d at 180(¶ 6). In only one of the cases did a party seek a writ of certiorari, which was granted. Dean, 797 So.2d at 830.
¶ 10. The Supreme Court found us to have been too restrictive in our understanding of what is required in administrative processes. Id. at 835-36. Administrative procedures require unbiased decision-making but do not require that agencies follow the model of court procedures. General administrative law principles do not require that all fact-finding and all adjudication be kept entirely separate. An investigator can at times become the prosecutor and then the adjudicator, so long as that is not the final available level of agency action. 2 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 9.8, at 81 (1994), relying upon Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The PERS medical board, which is composed of three physicians, was authorized by statute to make disability determinations. Miss.Code Ann. §§ 25-11-103(p), 25-11-119(7) (Rev.2003). The medical board "shall arrange for, and pass upon, all medical examinations" required for the disability determination and then report its results to the PERS Board of Trustees. Miss.Code Ann. § 25-11-119(7). A then-member of the medical board, Dr. Rahul Vohra, conducted the medical examination; he then sat on the medical board when his examination-based opinions about Flowers' medical condition were considered along with other evidence.
¶ 11. The Supreme Court held that there was no due process error in allowing one of those physicians to conduct a physical examination and then report to fellow board members on the findings. Dean, 797 So.2d at 835-36. At this stage of the administrative process, that is the benefit of having a board that contains physicians. An agency adjudicator may be an evidence gatherer as well. A doctor may examine a claimant, provide a diagnosis and recommendation, and then vote with the other members of the Medical Board on the disability issue. Dean, 797 So.2d at 836.
¶ 12. Next procedurally, a dissatisfied applicant for benefits may seek review of the Medical Board's conclusions that no disability existed. In Dean and the other two precedents, two members of the Medical Board sat on the new committeethe Disability Appeals Committee. Id. at 836. After the hearing, the committee certified the results to the Board of Trustees with a recommendation. The Board of Trustees was to make its decision based solely on the record certified to it. Miss.Code Ann. § 25-11-120(2) (Rev.2003). The statutory language underlying that approach is that the Board of Trustees "is authorized to appoint a committee of the board to serve as hearing officer . . ." for the appeal. Miss.Code Ann. § 25-11-120(3); Miss. Code Ann. § 25-11-103(h) ("board" in these statutes refers to the PERS Board of Trustees). The "board" from which some members of the Appeals Committee could be drawn was the Board of Trustees, not the Medical Board. The state Supreme Court held that the Board of Trustees was not authorized "to appoint a committee *977 comprised partly of members of the Medical Board to sit as hearing officers in review of a decision by the Medical Board." Dean, 797 So.2d at 836. The possible due process violation did not need to be considered since the Supreme Court found that the statutes did not authorize Medical Board members to serve on the Appeals Committee. Id. at 826-37.
¶ 13. Though the Supreme Court reviewed only one of our opinions, the error it identified applies to all three of our 1999 opinions. We overrule those parts of our 1999 decisions in Flowers and Burns rejected by Dean's analysis concerning doctors' on the Medical Board examining claimants, making a diagnosis and recommendation, and then voting as members of the Medical Board on the disability claims. Dean, 797 So.2d at 836(¶ 24). There is no defect in that procedure.
B. Standard for awarding benefits
¶ 14. We should begin a review of the determination made on Flowers' claim with a clear understanding of what is required for a claimant to be found disabled under this benefits program. The basic outlines of the entitlement appear in one section of the Public Employees' Retirement Law. Miss.Code Ann. § 25-11-113 (Rev.2003); see Miss.Code Ann. § 25-11-1 (Rev.2003).
(1) (a) Upon the application of a member or his employer, any active member in state service who has at least four (4) years of membership service credit may be retired by the board of trustees on the first of the month following the date of filing such application on a disability retirement allowance, but in no event shall the disability retirement allowance commence before termination of state service, provided that the medical board, after an evaluation of medical evidence that may or may not include an actual physical examination by the medical board, shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired; however, the board of trustees may accept a disability medical determination from the Social Security Administration in lieu of a certification from the medical board. For the purposes of disability determination, the medical board shall apply the following definition of disability: the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation. The employer shall be required to furnish the job description and duties of the member. The employer shall further certify whether the employer has offered the member other duties and has complied with the applicable provisions of the Americans With Disabilities Act in affording reasonable accommodations which would allow the employee to continue employment.
(b) Any inactive member with four (4) or more years of membership service credit, who has withdrawn from active state service, is not eligible for a disability retirement allowance unless the disability occurs within six (6) months of the termination of active service and unless satisfactory proof is presented to the board of trustees that the disability was the direct cause of withdrawal from state service.

*978 Miss.Code Ann. § 25-11-113 (emphasis added).
¶ 15. This statute provides the following elements for a disability claim: (1) a physical or mental incapacity prevents further performance of (a) the usual duty of employment, or (b) lesser duty that the employer may assign at its discretion, or (c) duty of any employment covered by PERS subject to certain limitations; (2) the incapacity is permanent; (3) if the employee has withdrawn from employment, the disability must have occurred within six months of leaving service, and (4) the disability must have been the direct cause of the withdrawal from state service.
C. Evidence of Flowers' disability
¶ 16. There was significant evidence that Flowers has numerous health problems. The question facing PERS was whether those problems resulted in a qualifying disability under the statute that we have quoted. Flowers had been a secretary, receptionist and switchboard operator at Hinds Community College, a position which was sedentary at least to some degree. There was evidence that she occasionally needed to stand as part of her duties.
¶ 17. On appeal, Flowers alleges that she is disabled because of migraine headaches, diabetes, high blood pressure, and arthritis in each knee. Some of these problems began in the 1980's. She missed substantial periods of work leading up to the following decision by the community college, given to her in a letter dated May 6, 1994, effective on May 20:
Your contract as switchboard operator . . . will be terminated. This termination is due to your inability to meet the responsibilities of this position.
We appreciate the contribution you have made to our system, and wish for you improved health in the future. . . .
¶ 18. There is a letter from the college that from April 1, 1993 until May 20, 1994, Flowers was able to work only thirty percent of the time. That letter was submitted to the United States Social Security Administration (SSA) as part of the evidence in the simultaneous proceedings for determining whether Flowers was disabled under the Social Security standards. As previously noted, SSA determined that she was disabled and she is receiving federal disability benefits.
¶ 19. Flowers asserts that at the time of her initial claim, PERS had a policynot required by statuteof adopting the disability determination reached by SSA. Flowers' initial PERS claim was denied on September 7, 1994. She made no appeal from that determination, and the claim that we are reviewing now is from a filing that she made in December 1995, soon after the October 1995 determination by SSA that she was disabled under the terms of the Social Security Act. Before that SSA decision, PERS had abandoned its policy of accepting the federal disability conclusion. The change in policy was announced by PERS at least by February 1995. Thereafter, PERS would follow the terms of the state statute that it "may accept a disability medical determination from the Social Security Administration in lieu of a certification from the medical board." Miss.Code Ann. § 25-11-113(1)(a). The discretion was with PERS. As to Flowers, PERS subsequently rejected the SSA determination.
¶ 20. We have nothing in the record detailing the procedure that PERS previously followed as to the SSA determinations. This record does not reveal that PERS at the time of the Flowers claim had a policy to delay a final determination until after SSA announced its decision. There is evidence that as to one claimant *979 in 1993, PERS awaited completion of the SSA benefits decision before making the PERS determination. We reject that evidence of one instance of delay proves anything other than PERS for claimant-specific reasons concluded that there was some purpose served by making a final evaluation of that other claimant only after the federal determination was made. Flowers needed to show that there was either a policy to await the SSA determination that was ignored as to her, or else that there was such a varying procedure on delay as to amount to arbitrariness. Since no policy of delay was shown, arbitrariness would need to be proven. One instance of delay in another claimant's benefit's ruling until SSA made its determination does not indicate such fluctuation and caprice in decision-making as to undermine PERS's failure to delay as to this claimant.
¶ 21. PERS acted on Flowers' initial claim in 1994, over a year before the SSA ruled. By the time that a determination of disability was made by SSA in 1995, PERS had abandoned its former reliance on such federal decisions. When Flowers thereafter filed a second claim at PERS in late 1995, the new discretionary policy regarding SSA decisions was in effect. Since we have found no basis on which to hold that PERS erred when it failed to set aside its denial of Flowers' first claim and apply this SSA decision to it, we turn to whether PERS made a decision that is justified by the evidence in the record.
¶ 22. The Disability Appeals Committee prepared a Statement of Facts, Conclusions of Law and Recommendation to the PERS Board of Trustees to deny Flowers' claim. The Board adopted the recommendations. We therefore review the Committee document as the approved explanation of the final decision of the agency. The PERS denial of Flowers' claim was affirmed by the first level judicial review by the Hinds County Circuit Court. As did the circuit court, we review the record made at PERS to determine (1) if substantial evidence supports the decision and (2) whether there was arbitrariness or caprice in the decision. No claim is made on appeal (3) that the Board acted beyond its statutory authority or (4) that constitutional rights of the claimant were violated, and therefore we do not analyze those two factors. Together, these are the four issues for judicial review of an agency decision such as that made by PERS. Miss.Code Ann. § 25-11-120(2) (Rev. 2003); Pub. Emp. Ret. Sys. v. Howard, 905 So.2d 1279, 1284 (Miss.2005). If the PERS decision as explained in the Appeals Committee document is supported by substantial evidence in the record, and is neither arbitrary nor capricious, we are to affirm.
¶ 23. After the remand from this Court, an initial hearing was held at the Disability Appeals Committee in May 2001. Dr. Albert Britton, III, who had treated Flowers beginning in 1983, was the only witness regarding Flowers' medical condition who testified at the hearing other than the claimant herself. Flowers had seen various physicians during the period leading up to her departure from Hinds Community College in May 1994. Medical records from those physicians were introduced, as was evidence about her employment at Hinds Community College.
¶ 24. Dr. Britton first saw Flowers in 1983. Though his treatment and consultations regarding Flowers spanned January 1983September 1996, he testified that he did not see her from 1988 until May 31, 1994. He did examine her on the latter date. The Disability Appeals Committee noted that Flowers left employment on May 24, 1994, or a week before Dr. Britton's first examination of Flowers in six years. In its findings, the committee stated *980 that "[s]ince Mrs. Flowers had already [been] terminated by the 1994 date, the ensuing medical record is not very helpful in determining whether or not she met the disability criteria at the time of termination from covered employment." If the committee was concluding that a thorough examination and report of Flowers' medical condition a week after she left employment was of little weight, that was incorrect. Only if the committee foundbased on substantial evidencethat something significant occurred physically to Flowers during the week gap between leaving employment and having the examination, would we accept that the May 31, 1994 report should be discounted simply because of its timing. Perhaps the committee was only stating that much of what was in the "ensuing medical record" on which Dr. Britton based his conclusions, which extended from May 31, 1994 until September 1996, was unhelpful since during the latter periods it dealt with new or worsening ailments. We consider the May 31, 1994 medical record to be the best evidence of what Flowers' condition was on the date that she left employment at Hinds Community College.
¶ 25. Dr. Britton testified, based on his records, that Flowers had cardiovascular disease, advanced degeneration of the knees, migraine headaches, diabetes, and chronic costochondritis, which is an inflammation of the cartilage that connects the inner end of each rib with the sternum. PERS examined Dr. Britton's records and evaluated the doctor's testimony. It found Dr. Britton to be a "compassionate historian" of Flowers' medical condition. The committee's conclusion, though, adopted by PERS, was that her various medical problems were under control and were not disabling in May 1994. Flowers' "blood pressure, diabetes, and gastrointestinal problems were being successfully treated with medication." Later in 1994, Dr. Britton saw her for sinus problems, chest pain, sore throat, hypertension, and headaches. Some of these problems resulted from an automobile accident in which she was involved after her leaving Hinds Community College. These health problems were determined by PERS not to be disabling.
¶ 26. PERS also did not accept Dr. Britton's belief that a sickle cell trait caused many of Flowers' problems. There is nothing in Dr. Britton's records to support the claim that he had diagnosed a sickle cell trait. At the hearing, Dr. Britton himself was unable to find any reference to sickle cell in his medical records. The PERS decision also states that "sickle cell trait is not known to cause chronic medical conditions. It is simply a carrier state for sickle cell." Part of the benefit of having physicians on the Disability Appeals Committee is so that they can analyze the medical claims. When a thorough set of findings and conclusions explain the expertise that those physicians applied, we find no fault in relying on such expertise.
¶ 27. Flowers challenges the sufficiency of PERS's explanation of its decision. She considers the application of the medical expertise by the Disability Appeals Committee to be an example of extra-record expertise that may not be the silent basis for a decision. Though we are cited by Flowers to a concurring opinion of this Court, we rely on the clearer and more authoritative expression of this point made by the Mississippi Supreme Court.
"[I]if an agency does not disclose the reason upon which its decision is based, the courts will be usurped of their power of review over questions of law." McGowan [v. Miss. State Oil & Gas Bd., 604 So.2d 312, 324 (Miss.1992)]. "It is a logical and legal prerequisite to intelligent judicial review in these cases that *981 the Board favor us with more than mere conclusory findings." Id.

Pub. Emp. Ret. Sys. v. Howard, 905 So.2d at 1289; see also Pub. Emp. Ret. Sys. v. Kellum, 878 So.2d 1044, 1051 (Miss.Ct. App.2004) (Southwick, P.J., concurring).
¶ 28. The Disability Appeals Committee's explanation does not fail under this standard. When a physician on the Committee states a medical conclusion such as that the sickle cell trait does not cause chronic medical conditions, we do not find that there must be a citation to some medical treatise. The courts do not require that such a group of experts treat their task as similar to that of appellate courts, where a citation for every point is de rigeur. What is required is an explanation that goes beyond mere conclusions. The conclusions here were explained.
¶ 29. Flowers also contends that the Supreme Court requires that Flowers have been sent by PERS to a physician for examination if Flowers' evidence was to be rejected. Cited is a precedent in which the Court found that benefits were properly denied because the claimant refused to submit to an examination ordered by PERS. Howard, 905 So.2d at 1289. In that opinion, the Court encouraged PERS in other cases to do what it had sought to do in that case, which was to use its statutory discretion to "request additional medical evidence and/or other physicians to conduct an evaluation of the member's condition." Id., quoting Miss.Code Ann. § 25-11-113(1)(e) (1999). As to Flowers, that discretion was not exercised. Any agency's use of discretion is a matter subject to review for an abuse in its exercise. We do not interpret Howard to require a finding that there has been such abuse whenever another medical examination is not required by PERS. Here, the agency determined it had sufficient evidence to make its determination. Though we may have weighed the evidence differently, we defer to that decision-making unless there is insubstantial evidence to support it or arbitrariness in how the decision was reached.
¶ 30. Returning to the explanation of the decision, we note again that the Disability Appeals Committee decision contains the troubling sentence that we earlier quoted regarding the records of the May 31, 1994 examination being "unhelpful" because that exam was after Flowers left her employment, we conclude that PERS adequately reviewed Dr. Britton's evidence and gave additional, substantial reasons for concluding that no disability was proven.
¶ 31. The PERS decision reviewed other medical records besides those of Dr. Britton. Beginning in early 1993, Flowers sought treatment from orthopaedist Edward James, complaining of pain in her right knee and lower back. Dr. James admitted Flowers for arthroscopic surgery on her right knee so that he could rule out internal derangement of the knee. Flowers was hospitalized for the procedure from May 14, 1993 to May 17, 1993. Upon discharge, Dr. James diagnosed Flowers with osteoarthritis in the right knee as well as hypertension.
¶ 32. Flowers had twelve follow-up exams with Dr. James between June 1993 and May 1994. After her August 19, 1993, follow-up appointment, Dr. James reported that Flowers could not return to work until she was no longer walking with the assistance of crutches. Dr. James noted on October 26, 1993, that Flowers was making gradual progress, but on December 14, 1993, Dr. James reported that Flowers had indicated she was having problems tolerating her job. He recommended a three-month leave of absence.
*982 ¶ 33. Finally, on May 24, 1994, Dr. James assigned Flowers a twenty-five percent impairment as a result of the problems with her right knee. He released her from the clinic at that time with the warning that she may eventually need a full knee replacement. He also told her that if she had further problems to contact him.
¶ 34. On April 22, 1994, Flowers was admitted to Methodist Medical Center complaining of chest pain. Treating physician David Sullivan discharged her the following day after a series of tests. Dr. Sullivan diagnosed Flowers with non-cardiac chest pain, non-insulin dependant diabetes, hypertension, and migraine headaches. No mention is made in Dr. Sullivan's records of the necessity of any additional time away from work or any debilitating condition. Instead, Dr. Sullivan gave her medication, told her to have an outpatient test performed, and states that her chest pain was more likely gastric than cardiac in origin.
¶ 35. PERS recognized that in 1994 Flowers was suffering from a variety of health problems that we have discussed. The record supports the existence of these illnesses. Also present in the record is substantial evidence in support of PERS's finding that these were illnesses that did not render Flowers disabled in May 1994, as each of the conditions was being successfully treated.
¶ 36. The decision of the Disability Appeals Committee, adopted by the PERS Board of Trustees, adequately explained the reasons that PERS concluded that Flowers had not met her burden of proving that she was disabled under the relevant statutes. The evidence supports that decision.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] The previous opinion is withdrawn and this is substituted. The motion of rehearing is denied.