IN THE SUPREME COURT OF MISSISSIPPI
NO. 1999-SA-00700-SCT

*NANCY BYRD*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/17/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. SMITH |
| ATTORNEY FOR APPELLEE: | MARY MARGARET BOWERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 12/21/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/11/2001 |

**BEFORE PRATHER, C.J., MILLS AND COBB, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## INTRODUCTION

¶1. Nancy Byrd, then an employee with the Lauderdale County Public School system, suffered an on-the-job back injury. Thereafter, she applied for permanent disability benefits through the Public Employees' Retirement System ("PERS") of Mississippi. Byrd's application was denied, and having exhausted all other appeals of this denial, she now appeals to this Court.

## STATEMENT OF THE CASE

¶2. Nancy Byrd worked for the Lauderdale County Public School system as an administrative assistant. She was so employed from November of 1972 until May 31, 1973; and from 1975 until her official termination in March of 1997.[1] While she was working, her duties included writing, preparing reports, sitting, using computers, walking, talking, and standing. Byrd suffered a back injury while participating in a training exercise at school on October 13, 1994.

¶3. It appears from the record that Byrd saw at least twelve doctors because of her back injury. During her visits with these doctors, she consistently reported being in pain. After examining Byrd, these doctors had different opinions regarding the severity of her condition, the best method of treatment for her condition, and her chances of recovery.

¶4. Dr. Glen Warren saw Byrd in August of 1995. Based on his examination, he felt that if she had surgery, the chances that she would completely recover and be able to return to her job were relatively good. Other

physicians recommended that Byrd undergo physical therapy and receive steroid injections before considering surgery, and these doctors had various opinions regarding how successful surgery would be.

¶5. Dr. Rahul Vohra, a member of the PERS Medical Board, treated Byrd from approximately September of 1996 through May of 1997.[2] At his direction, Byrd underwent a Functional Capacity Evaluation ("FCE") in November of 1996. Charlene Toney, an occupational therapist, administered Byrd's FCE. Notwithstanding that Byrd demonstrated a significant limp on her right leg during the evaluation, Toney observed that Byrd used that leg as her power leg during various exercises, and was able to bear her entire weight on her right leg. Additionally, when Byrd complained of pain and would state that she could not complete exercises, no significant increase in her heart rate occurred. Based on the results of the FCE, Toney was of the opinion that Byrd was capable of returning to her job with the school system.

¶6. Pursuant to the American Medical Association guidelines of permanent impairment, Dr. Vohra diagnosed Byrd as having an impairment of 5% to the whole person. This, coupled with the fact that Byrd had a sedentary job with the school system, caused him to be of the opinion that Byrd was able to return to work. Dr. Vohra released Byrd to return to work on November 19, 1996.

¶7. Dr. Eric Pearson treated Byrd in late 1997 and early 1998. He was of the opinion that Byrd's prognosis was poor whether or not she had surgery. He also felt that her chances of returning to work were not good. According to Byrd, Dr. Pearson didn't think that surgery would alleviate her pain.

¶8. Although Byrd received medical clearance to return to work, she failed to do so, and was subsequently terminated for failure to go back to her job. It was the opinion of Assistant Superintendent Ed Mosely that Byrd was capable of performing her job at the time she was terminated.

¶9. By application dated May 22, 1997, Byrd applied for permanent disability benefits. After reviewing her application on July 17, 1997, the PERS Medical Board voted unanimously to deny her application, finding insufficient evidence supporting her claim that she was unable to perform her job duties. Byrd appealed the decision of the Medical Board. On January 30, 1998, Byrd filled out and returned a PERS form NMI, which advised that all information she wished to be considered in connection with her appeal had been submitted. PERS received this form NMI on February 2, 1998. A hearing was held before the PERS Disability Appeals Committee on February 9, 1998, and on that same date, the Appeals Committee recommended that the decision of the Medical Board be affirmed. By order dated February 24, 1998, the PERS Board of Trustees adopted the recommendation of the Appeals Committee.

¶10. Byrd appealed the Board of Trustees' decision to the Hinds County Circuit Court, First Judicial District. By order dated March 17, 1999, the Honorable W. Swan Yerger, Circuit Judge, affirmed the decision. Byrd now appeals to this Court, raising the following assignments of error:

## ISSUES

**I. The Disability Appeals Committee erred in denying Byrd's request for disability benefits, as there was sufficient evidence in the record supporting a finding that she is unable to perform her job duties.**

**II The Board of Trustees erred in denying Byrd's motion for reconsideration, as Byrd asserts that she can produce additional medical documentation in support of her claim which was not available when she prosecuted her appeal to the Appeals Committee.**

**III. A conflict of interest existed within the Appeals Committee which resulted in the denial of Byrd's application for disability benefits.**

## LEGAL ANALYSIS

¶11. This Court's standard of review of an administrative agency's findings and decisions is well established. An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights. ***Sprouse v. Mississippi Employment Sec. Comm'n***, 639 So.2d 901, 902 (Miss. 1994). This Court may neither substitute its own judgment for that of the agency which rendered the decision, nor reweigh the facts of the case. ***Mississippi Pub. Serv. Comm'n v. Merchants Truck Line, Inc.***, 598 So.2d 778, 782 (Miss. 1992). This Court gives due deference to the factual findings of the administrative agency and to the trial judge who adopts those same findings. ***State Farm Ins. Co. v. Gay***, 526 So.2d 534, 535 (Miss. 1988).

## I. <u>Was there sufficient evidence in the record to support a</u>

## <u>finding that Byrd was permanently disabled?</u>

¶12. Byrd sought disability benefits under Miss. Code Ann. § 25-11-114(6) (1999). That statute allows recovery of disability benefits for any PERS member who becomes permanently disabled as a result of an on-the-job injury, regardless of the amount of creditable service that member has. Under Miss. Code Ann. § 25-11-113(a)(1) (1999), disability is defined as:

> the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System that is actually offered and is within the same general territorial work area, without material reduction in compensation.

¶13. Byrd argues that her actual physical impairment, combined with the pain and other adverse conditions from which she suffers, renders her unable to perform her job, thereby making her permanently disabled. She alleges that the Appeals Committee relied too heavily on Dr. Vohra's statement of actual physical impairment and, in doing so, failed to consider the findings of the other doctors. Byrd also alleges that the Appeals Committee "overlooks or minimizes the constant pain she suffers from."

¶14. Dr. Pearson felt that Byrd's chances of returning to work were poor regardless of what treatment she received for her back condition. To the contrary, Dr. Warren felt that if Byrd had surgery, her chances for a full recovery were good. Dr. Vohra, as well as the therapist who administered Byrd's FCE, were of the opinion that Byrd was ready to return to work without further medical treatment. Several doctors advised Byrd that she undergo physical therapy and steroid injections prior to considering surgery. However, she never participated in a continuous program of physical therapy, nor did she receive a regiment of steroid injections, as she claimed that the pain was too great when she tried to do these things. As previously noted, the FCE produced results which were inconsistent with Byrd's claims of pain.

¶15. Although the assessments of the medical personnel who treated Byrd are in stark contrast from one another, it was the job of PERS to determine which of these assessments to rely on in making its decision.

The opinions of Dr. Vohra and Charlene Toney, standing alone, are sufficient to support a finding that Byrd is not permanently disabled. To the contrary, had PERS found Byrd to be permanently disabled, Dr. Pearson's opinion, standing alone, would appear to support such a finding. In rendering its decision to deny Byrd's application for permanent disability benefits, PERS obviously gave more weight to the findings of Dr. Vohra and Charlene Toney than was given to the findings of Dr. Pearson. Such an act was within PERS' discretion. Therefore, we hold that there is sufficient evidence in the record supporting PERS' decision in this case.

## II. Should PERS have granted Byrd's motion for reconsideration?

¶16. Byrd filed with PERS a "Motion and Request for Reconsideration," said motion being dated March 23, 1998 (approximately one month after the Board of Trustees adopted the recommendation of the Appeals Committee). Along with this motion, Byrd attached a report issued by Dr. Malloy on March 18, 1998, in which Dr. David Malloy stated that he did not believe that Byrd was capable of returning to work. As PERS issued its final decision in this matter in February of 1998, this report was obviously not included in the evidence considered by PERS in making the decision. Byrd's motion asked PERS to reconsider her case, this time giving due consideration to Dr. Malloy's report. PERS declined to do so, which Byrd claims was error.

¶17. By letter dated May 8, 1998, Byrd was notified that she had been approved to receive Social Security Administration ("SSA") permanent disability benefits. Byrd attached this letter to her appeal to the Hinds County Circuit Court, said appeal being dated July 13, 1998. The SSA letter was not included with Byrd's motion for reconsideration.

¶18. Byrd now argues that when PERS issued its final decision denying her disability benefits, it was aware that she was continuing to see Dr. Malloy and also had a SSA claim pending. She further contends that Dr. Malloy's report and the SSA award are valuable pieces of information which PERS needs in order to fairly decide her clam, and that based on this information, PERS should have granted her motion for reconsideration. Byrd's argument is somewhat misguided, as she cites both Dr. Malloy's report as well as the SSA award as reasons that PERS should have granted the motion for reconsideration. However, when this motion was made, only Dr. Malloy's report was attached, and in fact, the SSA award was not made until approximately six weeks after Byrd's motion. Accordingly, in reviewing whether PERS erred in denying Byrd's motion for reconsideration, the SSA award is not a part of this Court's consideration.

¶19. In support of her argument, Byrd cites PERS Regulation 42(b), which, at the time Byrd's appeal was prosecuted, stated the following:

> [the PERS Rules of Hearing Practice and Procedure before the Board of Trustees] shall be liberally construed to secure just, speedy and economical determination of all issues presented to the Board. In special cases, where good cause appears, not contrary to statute, the Board may permit deviation from these rules insofar as it may find compliance therewith to be impracticable or unnecessary.

¶20. Byrd argues that had PERS liberally construed its rules, as required by Regulation 42(b), it would have granted her motion to reconsider her case in light of this new evidence. However, had PERS reconsidered her claim along with this new evidence, this action would have violated Miss. Code Ann. § 25-11-120 (1999), which provides an appeals process for individuals aggrieved by a PERS decision.

¶21. Under § 25-11-120(1), an individual may appeal a decision made by the Medical Board to the Appeals Committee. After a hearing before the Appeals Committee, the hearing officer is to certify the record to the Board of Trustees. "The [Board of Trustees] shall receive the record and *make its determination based solely on matters contained therein*." (emphasis added).

¶22. Had the Board of Trustees reconsidered Byrd's claim and made its determination using evidence (Dr. Malloy's report) which was not in the record made before the Appeals Committee, it would have violated § 25-11-120(1). This, in turn, would have been improper under Regulation 42(b), the very regulation Byrd cites in support of her argument on this issue. Therefore, we find that PERS correctly denied Byrd's motion for reconsideration.

¶23. With regards to her subsequent award of SSA disability benefits, this information was not in the record before the Board of Trustees,and, therefore, not to be considered by the Hinds County Circuit Court.

> Any individual aggrieved by the determination of the [Board of Trustees] may appeal to the Circuit Court of the First Judicial District of Hinds County, Mississippi . . . Such appeal shall be made *solely on the record before the [B]oard* and this procedure shall be the exclusive method of appealing determinations of the [B]oard.

Miss. Code Ann. § 25-11-120(2) (emphasis added).

¶24. Since Byrd's award of SSA benefits was not properly before the circuit court, this Court can not consider this evidence in reviewing PERS' decision to deny Byrd's claim.[3]

¶25. Byrd argues that it would have been more appropriate for the Board of Trustees to have delayed making its final decision until it received additional evidence regarding Byrd's condition. However, it was Byrd who determined at what point to discontinue submitting medical information to PERS. She did this by executing a PERS form NMI on January 30, 1998, which states the following:

> Prior to the scheduling of a hearing before the PERS Medical Board, I, Nancy Byrd, certify that all medical information available from my physicians and hospitals considered pertinent to my claim and for review by the PERS Medical Board, has been submitted. I certify that no additional information is available. *Should additional information become available*, I understand that the PERS Medical Board reserves the right to review the information *prior to setting a hearing for my claim*.

(emphasis added).

¶26. PERS received this form on February 2, and the hearing before the Appeals Committee was held on February 9. Dr. Malloy's report indicating his opinion that Byrd could not return to work and the information regarding her award of SSA benefits became available after her hearing before the Appeals Committee. By the terms of the Form NMI, which Byrd personally executed, this information was not eligible for consideration by PERS. Had she wished to keep open the "window of opportunity" in which she could continue to submit favorable medical information to PERS, she could have simply delayed her submission of the form NMI until a later date. The record does not indicate, and Byrd does not allege, that she was forced to prosecute her claim earlier than she would have liked because of any looming time deadlines, such as a statute of limitations.

¶27. Accordingly, we find that PERS acted properly when it denied Byrd's motion for reconsideration.

### III. Did a conflict of interest exist within the Appeals Committee?

¶28. Miss. Code Ann. § 25-11-120(3), which deals with hearings before the PERS Appeals Committee, provides that the Board of Trustees " is authorized to appoint a committee of the [B]oard to serve as hearing officer or to employ or contract with qualified personnel to perform the duties of hearing officer and court reporter as may be necessary for conducting, recording and transcribing such hearings." When Byrd appeared before the Appeals Committee, it was comprised of three voting members: Dr. David Duddleston, Dr. William Nicholas, and Assistant Attorney General Michael Langford, who served as the hearing officer. In addition to these three voting members, Dr. Michael Winkelmann also sat on the Appeals Committee; however, he did not vote on Byrd's appeal. All four of these individuals questioned Byrd during the course of her hearing. At the conclusion of the testimony, the three voting members of the Appeals Committee voted to affirm the Medical Board's initial decision to deny benefits.

¶29. Byrd now argues that Dr. Winkelmann's presence on the Appeals Committee created a conflict of interest which deprived her of a fair hearing. Byrd bases this argument on the fact that Dr. Winkelmann shared a medical practice with Dr. Vohra, who provided evidence which weighed against her claim of disability. Byrd asserts that in denying her claim, PERS relied heavily on Dr. Vohra's opinion as to the lack of severity of her impairment. She further asserts that the Appeals Committee could not fairly and impartially review the Medical Board's decision when that decision was predicated on the opinion of the partner of a member sitting on its committee. PERS counters this argument by stating that, regardless of the relationship between Dr. Winkelmann and Dr. Vohra, no conflict of interest could exist since Dr. Winkelmann did not vote on Byrd's appeal.

¶30. Although the case is factually distinguishable from the case *sub judice*, ***Dean v. PERS,*** is dispositive on the current issue. ***Dean v. PERS***, No. 98-CT-00033-SCT (Miss. Dec. 21, 2000). In that case, Dean's application for disability benefits was initially denied by the PERS Medical Board. Dean notified PERS that he would appeal, and PERS arranged for Dean to be examined by a physician of its choice, Dr. Vohra. After examining Dean, Dr. Vohra submitted an opinion that Dean was not entitled to disability benefits. Thereafter, the Medical Board issued a second denial of Dean's application. Dean appealed this second denial, and he was afforded a hearing before the PERS Appeals Committee. Sitting on the Appeals Committee were Dr. Vohra, who had just examined Dean, and Dr. Winkelmann, both of whom were members of the PERS Medical Board. The Appeals Committee voted to affirm the Medical Board's denial of benefits, a decision adopted by the PERS Board of Trustees.

¶31. In reversing and remanding the denial of Dean's application, this Court held that "no reasonable interpretation of Miss. Code Ann. § 25-11-120(3) and the relevant attendant statutes will allow the Board of Trustees to appoint a committee comprised partly of members of the Medical Board to sit in review of a decision by the Medical Board." *Id.* ¶ 26.

¶32. Although Drs. Duddleston and Nicholas were not members of the Medical Board when Byrd appeared before the Appeals Committee, Dr. Winkelmann was. Dr. Winkelmann questioned Byrd about the physical therapy she had undergone, the pain she suffered, the requirements of her job with the school system, the medications she took, and the effects of those medications. Notwithstanding that he did not actually vote on Byrd's appeal, under this Court's holding in ***Dean***, Dr. Winkelmann's presence on the Appeals Committee, and his participation in Byrd's hearing, was not allowed by the statutes which govern PERS. Accordingly, we find this assignment of error to be well taken.

## CONCLUSION

¶33. By allowing Dr. Winkelmann, a member of the Medical Board, to participate in the appeals process reviewing the Medical Board's decision to deny Byrd's application for permanent disability benefits, PERS comprised its Appeals Committee in a manner which exceeded the statutory authority granted to it by the Legislature. Therefore, we reverse that decision and the judgment of the circuit court, and we remand this case to PERS, with directions that Byrd's application for disability benefits be reviewed and acted upon by an Appeals Committee that does not include any members who were members of the Medical Board which denied Byrd's application.

¶34. **REVERSED AND REMANDED.**

> **PITTMAN AND BANKS, P.JJ., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**

1. Notwithstanding that she was terminated in March of 1997, her last day of work for which she was paid was June 30, 1995.

2. Dr. Vohra treated Byrd as a private patient, as this treatment occurred prior to her May 22, 1997, application for disability benefits.

3. Even if this Court could consider Byrd's award of SSA benefits, this is not necessarily relevant to the case. Although under Miss. Code Ann. § 25-11-113(1)(a), PERS may accept a determination of disability from the SSA in lieu of certification from its Medical Board, it is not required to do so. Additionally, an individual is entitled to SSA benefits if that person has an impairment which can be expected to last for twelve months or more (42 U.S.C. § 423), while a person must be permanently disabled in order to be entitled to PERS disability benefits. Therefore, PERS and the SSA have different definitions of what constitutes a permanent disability.