917 So.2d 104 (2005)
PUBLIC EMPLOYEES RETIREMENT SYSTEM, Appellant
v.
Robert D. PITTMAN a/k/a Robert D. Pittman, Jr., Appellee.
Robert D. Pittman, Appellant
v.
Public Employees' Retirement System, Appellee.
Nos. 2003-CC-01709-COA, 2002-CC-01349-COA.
Court of Appeals of Mississippi.
May 31, 2005.
Rehearing Denied September 20, 2005.
Certiorari Denied December 15, 2005.
*105 Office of the Attorney General by Mary Margaret Bowers, for appellant.
Ben Logan, for appellee.
Before BRIDGES, P.J., IRVING and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. In cause number 2003-CC-01709, the Public Employees' Retirement System (PERS) appeals the decision of the Circuit Court of the First Judicial District of Hinds County which reversed its decision denying Robert D. Pittman's claim for disability benefits. In cause number 2002-CC-01349, Robert D. Pittman appeals the decision of the Circuit Court of the First Judicial District of Hinds County affirming the denial of disability benefits to him. The judgment in cause number 2002-CC-01349 was entered by Circuit Judge Tomie Green on July 3, 2002, while the judgment in cause number 2002-CC-01709 was entered by Circuit Judge Winston Kidd on September 20, 2002. By order of the Mississippi Supreme Court entered on September 20, 2003, the two cases were consolidated.
¶ 2. The issues in both cases are the same, that is, the propriety of Robert D. Pittman being awarded or denied disability benefits by the Public Employees' Retirement System. In resolving this appeal, we proceed with PERS as the appellant and address the issue raised in its appellate brief: the circuit court reweighed the facts and erroneously substituted its judgment for the judgment of PERS, the administrative agency charged with the responsibility for deciding such issues of fact.
¶ 3. We find merit in PERS' argument. Consequently, we reverse the judgment of the circuit court in cause number 2002-CC-01709 and reinstate the decision of the Board of Trustees of the Public Employees' Retirement System. It follows that the judgment in cause number 2002-CC-01349 is affirmed.

FACTS
¶ 4. On November 27, 1997, Pittman appealed to the Circuit Court of the First Judicial District of Hinds County PERS' decision denying him disability benefits. From that point, the case took a long and circuitous route resulting in both defeat and victory for Pittman. However, a recitation of that history is not necessary for our disposition. It is sufficient that we recount the relevant medical evidence undergirding both Pittman's and PERS' respective *106 positions in the appeal now before us.
¶ 5. In August 1989, Robert D. Pittman consulted Dr. Robert J. Kaplan, a dermatologist. At that time, Pittman had a long history of psoriasis vulgaris involving his entire body, scalp, face, neck, extremities, and trunk. Dr. Kaplan's diagnosis was consistent with Pittman's history, that is, Dr. Kaplan diagnosed Pittman with psoriasis vulgaris.
¶ 6. In 1990, Pittman obtained employment with the City of Tupelo as a sworn police officer. Prior to this employment, Pittman had worked as a policeman for the City of Starkville. While employed with the City of Tupelo, Pittman moved through the ranks and achieved the position of master sergeant. During the relevant period for purposes of this appeal, Pittman was serving as a Drug Abuse Resistance Education (DARE) officer.
¶ 7. Dr. Kaplan continued to see Pittman during the years 1990 and 1991, usually on a monthly basis and seldom less than on a quarterly basis although occasionally six or seven months elapsed between the periods of consultation and treatment. Dr. Kaplan continued his treatment of Pittman during the following years, usually seeing Pittman on a monthly basis, although sometimes there was either a little less or a little more than a monthly interval between the treatments and consultation. During this period of time, the lesions, caused by the psoriasis vulgaris from which Pittman suffered, waxed and waned.
¶ 8. Dr. Kaplan testified that, based upon a reasonable degree of medical certainty and probability, he believed that by 1997 Pittman had psoriatic arthritis.[1] He explained that psoriatic arthritis is associated with psoriasis and is "a particular arthritis you get in the fingers, you get in the sacroiliac joints." Dr. Kaplan stated that the effects of such a condition are swelling of some of the finger joints and pain in the back. He further explained that this type of arthritis is often diagnosed clinically and by X-rays of the joints. Dr. Kaplan testified that psoriatic arthritis factors would not be positive in blood cultures or blood studies testing for rheumatoid arthritis. According to Dr. Kaplan, psoriatic arthritis has the same type of symptoms as rheumatoid arthritis but the same diagnostic studies cannot detect psoriatic arthritis.
¶ 9. In Dr. Kaplan's opinion, as of February 7, 1997, Pittman was temporarily and totally disabled from performing his duties as a police officer. Dr. Kaplan testified that, based on a reasonable degree of medical certainty and probability, Pittman could not perform the substantial requirements of his employment as a police officer. Dr. Kaplan placed several restrictions on Pittman's activities although he could not give any specific weight restrictions. However, he stated that Pittman should avoid excessive lifting.
¶ 10. Dr. Kaplan testified that Pittman had reached a stable point. However, Dr. Kaplan would not say that Pittman had reached maximum medical recovery, although he did not expect to cure Pittman's psoriasis vulgaris until new medications were available. Dr. Kaplan stated that it is often felt that if the psoriasis gets better the arthritis will get better, but that is not always the case.
¶ 11. Dr. Kaplan gave Pittman a ten to twenty-four percent anatomical impairment rating and recommended that Pittman should consider retirement since Pittman's condition was chronic, permanent, *107 and recalcitrant despite multiple treatment regimens. Dr. Kaplan opined that specific job activities, both physical and mental, as a sworn officer and as a DARE instructor caused Pittman's condition to worsen.
¶ 12. Pittman was referred by Dr. Kaplan to Dr. Franklin Adams, a rheumatologist. Dr. Adams' impression was that Pittman was suffering from "psoriatic sacroilitis and psoriatic spondylitis and probable psoriatic arthropathy peripherally." Pittman was treated with anti-inflammatory medication. Dr. Adams, noting that Pittman was on a long term leave of absence, opined, "This seems currently justified, and unless there is considerable improvement in this status it would be impossible for him to return to his prior employment." However, no objective evidence confirming these impressions accompanied the initial evaluation, and Dr. Adams reserved final opinion on the question of disability until after an adequate trial of treatment. No further records from Dr. Adams were submitted.
¶ 13. PERS had Pittman evaluated by rheumatologist Dr. Charles King of Tupelo. Dr. King's notes reflect the following:
He [Pittman] comes in today with chief complaints of right shoulder and low back as well as some knee pain. There is nothing on his history nor physical examination to suggest the presence of psoriatic arthritis. His back pain is much more consistent with mechanical low back pain and not back pain due to an inflammatory arthritis, such as psoriatic arthritis. Additionally, his neck pain is again more consistent with a very mild cervical spondylosis. He did have some previous x-rays done in 1995 and I reviewed these and they did reveal very mild joint space narrowing at the C6-C7 level. I did repeat those x-rays today and again alignment is good and I see no significant spurring or calcification of the longitudinal ligament. There is again very mild joint space narrowing at the C6-C7 level. I am going to go ahead and obtain a complete blood count, sedimentation rate, and c reactive protein today again to screen for further evidence of inflammatory arthritis, although again I really see no significant evidence of that and I think is [sic] problems are mostly on the basis of mild osteoarthritis.
On the page containing Dr. King's typewritten notes is the following handwritten notation, "The patient did not go to the lab for his blood testing. We tried to contact him at home but were unsuccessful." It appears that Dr. King presented his report to PERS without the benefit of the blood tests. However, it does appear that some blood testing was done, the extent of which is not clear from the record. The record contains an invoice from IMA Foundation, Inc. showing several procedures were performed on April 22, 1997, the date of Pittman's consultation with Dr. King.
¶ 14. Pittman testified that he had worked as a policeman for the City of Tupelo since 1990, and that his physician, Dr. Kaplan, had restricted him from performing certain job-related activities such as physically controlling and arresting violent criminals, sprinting and lifting items or people of weights up to and exceeding 150 pounds. Pittman stated that he could no longer sprint because walking made the psoriasis flare up and caused his hips to hurt and, because of shoulder pain, he could no longer lift weights up to and exceeding 150 pounds. Pittman also stated that he could not wear the tight fitting protective body armor because wearing his bullet proof vest made his chest flare up with psoriasis. Pittman further testified that extreme cold weather bothered him and that he got more psoriasis on his body when it was cold.
*108 ¶ 15. Pittman testified that he worked as a DARE officer. In that capacity, Pittman taught a core curriculum to fifth and sixth grade students. Pittman further testified that DARE has summer programs and because of his condition, he is not able to fully participate in some of the athletic events. Pittman stated that he has problems with walking and standing to a degree. Pittman also stated that due to joint pain in the elbows, hips and knees, he is not able to run, jump, or tackle. Pittman further testified that he had not received any treatment for the joint pain because it was easier for him not to do those activities. Pittman testified that Dr. Kaplan told him that the joint pain was part of the psoriasis. At the time of the hearing before the appeals committee, Pittman was taking Temovate, Ultravate and antibiotics for his psoriasis. Pittman testified that he has psoriasis on his chest, legs, genital area, stomach, buttock, fingernails, and toenails and that his treatment for the lesions involve getting as few as 50 and as many as 200 injections every two or three weeks.
¶ 16. The "Employer's Statement of Job Requirements" submitted to PERS as a part of Pittman's application for disability benefits was filled out by Charles Richardson, personnel director for City of Tupelo Police Department. On the statement Richardson checked "no" to the following question: "In your opinion, can the employee perform his/her job?" However, the question does not differentiate between the job as a police officer generally and the job as a DARE police officer which does not involve the physical activities of a police officer generally.

ANALYSIS AND DISCUSSION
¶ 17. The issue before the medical board and the disability appeals committee, as well as the PERS Board of Trustees, was whether Pittman, at the time of the determination of the disability question, could continue to function in his position as a DARE officer. PERS first argues that Pittman's claim does not meet the definition of a disability as defined under PERS law.
¶ 18. Disability is defined as:
the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation.
Miss.Code Ann. § 25-11-113 (Rev.2003).
¶ 19. PERS maintains that its decision denying disability benefits to Pittman was based on substantial evidence. PERS contends that the report from Dr. King shows that Pittman did not suffer from psoriatic arthritis and that PERS has the duty to determine which physician's assessment and other documentation it should rely on in making its determination. In support of this argument, PERS cites Byrd v. Public Employees' Retirement System, 774 So.2d 434, 438 (¶ 15) (Miss.2000) for the proposition that it is within its discretion to determine which documents gather more weight than others. PERS maintains that the findings of the disability appeals committee, adopted by the Board of Trustees, are clearly supported by the record. PERS contends that Pittman had been treated for years by Dr. Kaplan who was a dermatologist and that Dr. Kaplan thought that Pittman may have psoriatic arthritis but did not have objective evidence such as testing to confirm his opinion.
*109 ¶ 20. Pittman counters that he made a prima facie case of disability with his condition of psoriasis vulgaris and that he also proved psoriatic arthritis. Pittman contends that he testified as to the effects of his condition on his job as a police sergeant and DARE instructor and clearly identified which functions of the jobs were impacted. Pittman maintains that his physician of longstanding, Dr. Kaplan, supported these effects by medical treatment, diagnostic studies, and a medical opinion based on a reasonable degree of medical certainty and probability.
¶ 21. PERS next argues that the medical documentation submitted in support of Pittman's claim shows that the complaints are most likely not the result of psoriatic arthritis. PERS contends that the disability must be the reason that the claimant terminated employment and that Pittman failed to establish proof that he was disabled. PERS maintains that under the facts of this case and the record presented before this Court, it is obvious that its actions, in determining whether a disability exists, are entirely consistent with the requirements of Mississippi Code Annotated section 25-11-113 (Rev.2003) which defines "disability." PERS further asserts that the circuit court reweighed the facts, substituting its judgment for that of the administrative body.
¶ 22. Pittman counters that Dr. Adams, specialist in the field of arthritis, performed the specific diagnostic tests to identify psoriatic arthritis and his positive findings were included by way of lab reports and office notes containing opinions. Pittman maintains that Dr. King rendered his report to PERS without the benefit of lab studies ordered by Dr. King and to which Pittman submitted. Pittman contends that Dr. King's findings substantiated Pittman's complaints of pain even if by different diagnoses: mechanical low back pain, neck pain secondary to mild cervical spondylosis and right shoulder pain secondary to tendinitis.
¶ 23. Pittman also contends that Dr. King's opinion that, "I do not find significant evidence for psoriatic arthritis," was given without review of his own lab studies and without performing the HLA-B27 antibody screen and was based solely on, at most, a couple of hours of review of history, physical exam, and x-rays. Pittman maintains that other than the reference to Dr. King as one of Pittman's primary physicians, no other evidence or rationale is supplied. Pittman contends that his testimony, Dr. Kaplan's records, depositions and opinions constitute substantial evidence.
¶ 24. PERS contends that although Pittman alleged that he should be considered as a full time police officer, he was accommodated by being placed in the DARE position. The DARE position exempts him from any restriction related to the exposure to body fluids in his work. The DARE position also exempts him from performing annual physical fitness testing. PERS maintains that it did not find the statements of Dr. Kaplan to be credible with regard to assessing disability. Therefore, there is no real compelling evidence of psoriatic arthritis or limitations that it might cause.
¶ 25. Pittman counters that the DARE position was not an accommodation because Pittman and another officer originated the program in Tupelo before his condition became disabling.
¶ 26. This is by no means an easy case. What appears readily clear is that there was substantial evidence that Pittman, at least at the time that the determination was made, could not perform the normal duties of a police officer. Whether that would continue to be so in the future is unclear, depending upon the advance of *110 medical science in finding more effective medications to treat Pittman's condition. However, it is not at all clear from the evidence, that Pittman could not continue working as a DARE officer for the Tupelo Police Department.
¶ 27. Dr. Kaplan was unable to say that Pittman had reached maximum medical improvement or that Pittman's condition would continue indefinitely in the future. That eventuality was conditioned upon newer and more effective medications coming onto the market. It is also unclear whether Dr. Kaplan's assessment  that Pittman could not continue the substantial duties and responsibilities of a police officer  was based primarily on the fact that lesions covered approximately fifty percent of Pittman's body or on the fact that Pittman was suffering unbearable joint pain from the psoriatic arthritis. It seems, however, that Dr. Kaplan's assessment was based on the latter situation. We reach this conclusion first because there was no testimony that the lesions themselves caused great pain, no matter how unsightly. We now look at the evidence regarding the psoriatic arthritis diagnosis.
¶ 28. The evidence on the question of whether Pittman suffered from psoriatic arthritis is conflicting. Dr. Kaplan and Dr. Adams thought that he did. Dr. King thought the opposite. On the disabling question, Dr. Kaplan thought that Pittman was disabled, at least temporarily totally disabled. Dr. Adams reserved judgment until such time as an adequate period of treatment had occurred. There is no evidence in the record whether that period of treatment ever occurred. Dr. King did not think that Pittman suffered from any disability of long term duration.
¶ 29. We return to the definition of disability. As previously noted, disability is defined as "the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation." There is no contention that, as a DARE officer, Pittman received a reduction in compensation. At the onset of the alleged disability, Pittman was already serving as a DARE officer; therefore, he was not assigned to this position as an accommodation for his medical condition. However, we find that this fact carries no dispositive weight. If the City of Tupelo is willing to commit to keeping Pittman in this position, then that commitment may be adjudged a future accommodation for his medical condition. Richardson testified that the city was willing to consider doing so.
¶ 30. So, the evidence supports the following finding: that at the time the disability determination was made by PERS, Pittman, according to two doctors, was at least temporarily totally disabled. One doctor did not think he was disabled at all, but assuming arguendo that a disability existed, the disability was not of long term duration.
¶ 31. Section 25-11-113 of the Mississippi Code of 1972 as amended conditions the granting of disability retirement upon a finding by the PERS medical board that the incapacity from the further performance of duty "is likely to be permanent." What is the evidence on this point? As already observed, no one, not even Dr. Kaplan, opined that Pittman's incapacity was likely to be permanent. While at first blush it might appear that Dr. Kaplan's statement  that he did not expect to cure Pittman with the current medications available  is tantamount to saying that Pittman's condition is likely to be permanent, this statement has to be taken in the context of Dr. Kaplan's unwillingness to say that Pittman had reached maximum medical improvement, as well as in the *111 light of the fact that the lesions caused by Pittman's psoriasis have waxed and waned over the years.
¶ 32. Consequently, given our standard of review of deference to PERS on issues of fact, we are unable to conclude that PERS' finding that Pittman failed to meet his burden of proof as to disability is not supported by substantial evidence, is arbitrary or capricious, is beyond PERS powers to make, or is violative of Pittman's statutory or constitutional rights. Davis v. Public Employees' Retirement System, 750 So.2d 1225, 1229 (¶ 12) (Miss.1999). We, therefore, reverse and render the judgment in cause number 2002-CC-01709 and affirm the judgment in cause number 2002-CC-01349 which affirms the decision of the Board of Trustees of the Public Employees' Retirement System denying disability benefits to Pittman.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IN CAUSE NO 2003-CC-01709 IS REVERSED AND RENDERED; THE JUDGMENT IN CAUSE NUMBER 2002-CC-01349, AFFIRMING THE DECISION OF THE BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, IS AFFIRMED. ALL COSTS OF THESE APPEALS ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. MYERS, J., CONCURS IN RESULT ONLY. BARNES, J., NOT PARTICIPATING.
NOTES
[1] Dr. Kaplan testified by deposition. This was a deposition given by Dr. Kaplan pursuant to a workers' compensation claim filed by Pittman.