983 So.2d 335 (2008)
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant
v.
Jackie W. DEAN, Appellee.
No. 2006-SA-01692-COA.
Court of Appeals of Mississippi.
February 5, 2008.
Rehearing Denied June 3, 2008.
*337 Mary Margaret Bowers, attorney for appellant.
George S. Luter, Robert Q. Whitwell, Ashland, attorneys for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. The Public Employees' Retirement System of Mississippi (PERS) appeals the Hinds County Circuit Court's decision that awarded disability retirement benefits to Jackie W. Dean. The circuit court reversed the finding by the PERS Board of Trustees that Dean was not disabled. Finding error in the circuit court's decision to reverse the determination rendered by PERS, this Court reverses the judgment of the circuit court and reinstates the decision of the PERS Board of Trustees.

FACTS
¶ 2. On October 20, 1994, while mowing grass for the City of Iuka, Dean's mower became stuck in mud. In his attempt to push the mower out of the mud, his back twisted and popped. After the injury, Dean went to Dr. Ben Kitchens, his family practitioner, who diagnosed him with one ruptured disc and two bulging discs. He was then referred to Dr. Thomas Weems.
¶ 3. After his consultation with Dr. Weems, Dean underwent a lumbar discectomy on December 27, 1994, to repair the injury to the ruptured disc. Two weeks later, Dean met with Dr. Weems and described an intense heel pain in his right foot, not the left leg that he hurt prior to surgery. Dr. Weems stated, in his report dated January 11, 1995, "I feel that the patient should be evaluated orthopedically and will send him to Dr. James Varner for evaluation." This referral was solely for what appeared to be heel pain. On January 16, 1995, Dr. Varner examined and treated Dean for the heel pain. He then scheduled a follow-up examination with Dean for two weeks later, but acknowledged that Dr. Weems was scheduled to see Dean on January 31, 1995. Further, Dr. Varner's report stated, "Work status to be determined by Dr. Weems." Dr. Varner's two reports indicated that he did not see Dean again until May, not two weeks later as stated in his January 16 report.
¶ 4. Dean continued to be treated by Dr. Weems. On April 5, 1995, Dr. Weems stated in his report that there would be no danger in Dean returning to work. However, he would keep Dean off work for one additional month, although he felt that Dean had already reached maximum medical benefit. One month later, Dr. Weems released Dean to return to regular duties with no restrictions. On the same day, he referred Dean to Dr. Varner for orthopedic evaluation and pain management and to Dr. Keith Atkins for a psychological evaluation for depression.
¶ 5. On May 11, 1995, Dr. Varner evaluated Dean and stated in his report that Dean could be gainfully employed, but a sedentary position would be preferable. On June 9, 1995, only three and a half weeks later, Dr. Varner sent a letter to the City of Iuka placing the following restrictions on Dean's employment: "no standing, no lifting, no driving, no prolonged sitting and sedentary conditions only." The letter further stated that these conditions appeared to be permanent. Upon receiving these restrictions, the mayor of the City of Iuka stated that the City did *338 not have any positions that would allow Dean to continue his employment there. Subsequently, Dean has been unable to gain employment in accordance with Dr. Varner's restrictions.
¶ 6. On July 12, 1995, Dean applied for in-the-line-of-duty disability retirement with PERS pursuant to Mississippi Code Annotated Section 25-11-114(6) (Rev. 2006). In accordance with the application, Dr. Weems's and Dr. Varner's reports were submitted. Dr. Weems reported that Dean had a 16% impairment rating, chronic post-op discectomy with mild severity, and a good prognosis. Dr. Varner reported that Dean had a 15% impairment rating and a sedentary job would be preferable.
¶ 7. On October 16, 1995, Dean's attorney referred him to Dr. James Crowder, a vocational expert and psychologist. Dr. Crowder stated that Dean was of borderline intelligence, and he considered Dean to be 100% vocationally disabled "in terms of reduced access to the labor market." Through a referral by PERS, Dean was evaluated by Dr. Rahul Vohra. Dean testified that Dr. Vohra performed only a fifteen-minute physical evaluation. Dr. Vohra stated that Dean had a light level job, and he "should be able to perform this." Dean then saw Dr. Carl Welch, a family practitioner. Dean testified that Dr. Welch performed a four-hour-and-thirty-minute physical examination. Dr. Welch did not feel that "Dean is or ever will be able to engage in any type of gainful employment working an 8 hour day  40 hours per week."
¶ 8. In addition to the opinions provided by the various doctors, Dean testified that he had received several epidural steroid blocks from Dr. Angel Rodriguez since his evaluation with Dr. Varner. Also, Dean received a ruling from the Social Security Administration that he was determined to be disabled in accordance with their standards.
¶ 9. After receiving various reports, notes, and records from various physicians, PERS found that the reports conflicted with each other regarding whether Dean was disabled. PERS found that Dr. Weems and Dr. Vohra felt that Dean was not disabled, while Dr. Varner, Dr. Crowder, and Dr. Welch all felt he was permanently disabled. PERS placed more weight on Dr. Weems's opinion since he was the treating physician. PERS found that, while Dean would have periodic back pain, the pain was not disabling. After finding that Dean was not disabled, the Board of Trustees denied Dean disability benefits in accordance with Section 25-11-114(6).

PROCEDURAL HISTORY
¶ 10. After Dean was informed by the mayor of the City of Iuka that it did not have any available positions for him, he applied for hurt-in-the-line-of-duty disability benefits in accordance with Section 25-11-114(6). The PERS Medical Board found that Dean was not disabled and denied Dean any disability benefits. Upon Dean's request, a hearing was held on November 25, 1996, before the PERS Disability Appeals Committee. Following the hearing, the PERS Board of Trustees adopted the Committee's proposed statement of facts, conclusions of law, and recommendation to deny Dean's request for disability benefits.
¶ 11. Aggrieved, Dean appealed to the Circuit Court of Hinds County, and it affirmed the decision of PERS. Through further appeals, the case made its way through the Court of Appeals, Dean v. Public Employees' Retirement System, 98-CC-00033-COA (Miss.Ct.App. Apr. 20, 1999), and the supreme court, Dean v. Public Employees' Retirement System, *339 797 So.2d 830 (Miss.2000). The supreme court reversed the decision of PERS and remanded the case for a new hearing. The supreme court found that PERS had improperly allowed two members of the Medical Board, Dr. Vohra and Dr. Winkelman, to also sit on the Disability Appeals Committee. Id. at 836 (¶ 26). The supreme court stated that there was no "failure to provide due process [to Dean], in so far as Dr. Vohra examined Dean and provided a diagnosis and recommendation, and then voted with his fellow members of the Medical Board to deny Dean's application." Id. at (¶ 24).
¶ 12. On September 10, 2001, a second hearing was conducted by the PERS Disability Appeals Committee, and a supplemental hearing was held on June 10, 2002. On August 27, 2002, the PERS Board of Trustees adopted the Committee's proposed statement of facts, conclusions of law, and recommendation to deny Dean's request for benefits.
¶ 13. Aggrieved, Dean appealed the decision to the Circuit Court of Hinds County. On August 30, 2006, the circuit court reversed the decision of PERS and found that Dean was disabled and entitled to disability benefits in accordance with Section 25-11-14(6). PERS then instituted this appeal.

STANDARD OF REVIEW
¶ 14. The decision of an administrative agency must be undisturbed unless it is "(1) not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope of power granted to the agency, or (4) violates one's constitutional rights." Pub. Employees' Ret. Sys. v. Marquez, 774 So.2d 421, 425 (¶ 11) (Miss.2001). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Id. at (¶ 13) (quoting Delta CMI v. Speck, 586 So.2d 768, 768 (Miss. 1991)). It is the duty of "PERS, as the fact finder, to determine which evidence is more believable or carries the most weight." Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1287 (¶ 21) (Miss. 2005).

ANALYSIS
¶ 15. PERS alleges that the trial court impermissibly re-weighed the evidence when it overturned the decision of the PERS Board of Trustees. The circuit court was "of the opinion that the decision of the Board and the Disability Appeals Committee of PERS was not supported by substantial evidence, was arbitrary and capricious, and should be reversed." The trial court went on to state that there was "substantial evidence of Mr. Dean's disability as defined by Section 25-11-113. . . ."
¶ 16. Since Dean had only completed just under two years of membership service in PERS, he was only eligible for disability if caused by an accident that occurred while in the course of employment. This type of disability specifically required that Dean (1) be disabled and (2) became disabled "as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty. . . ." Miss.Code Ann. § 25-11-114(6). However, PERS found that Dean was not disabled; therefore, it chose not to address if the injury occurred in the line of performance of duty. Therefore, we first address whether there was substantial evidence to support the decision of the PERS Board of Trustees that Dean was not disabled.
¶ 17. There is no dispute that Dean suffered an injury to his back. The question before the PERS Board of Trustees was whether the injury caused Dean *340 to be permanently disabled. Disability is defined by statute as:
the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation. . . .
Miss.Code Ann. § 25-11-113(1)(a) (Rev. 2006). Further, at the administrative level, Dean had the burden to show that he was entitled to benefits. Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 893 (¶ 15) (Miss.2001). However, in accordance with our standard of review on appeal, "the question is not whether there was evidence in support of [Dean's] disability, but whether there was substantial evidence to support the finding of the administrative agency." Id. at (¶ 12) (emphasis added).
¶ 18. In this case, we are presented with the medical opinions of five different doctors that conflict with each other. Dr. Weems and Dr. Vohra felt that Dean was able to return to work without restrictions, but with some recurrent symptoms and pain. However, Dr. Varner opined that Dean could return to work, but only with heavy restrictions that appeared to be permanent. Further, both Dr. Crowder and Dr. Welch felt that Dean was permanently disabled due to his lower back injury. The PERS Board of Trustees decided to rely on Dr. Weems's opinion as to Dean's disability.
¶ 19. The supreme court has stated that, while our standard of review is highly deferential to the administrative agency, "if the agency does not disclose the reason upon which its decision is based, the courts will be usurped of their power of review over questions of law." Howard, 905 So.2d at 1288 (¶ 24) (quoting McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 324 (Miss.1992)). Here, the PERS Board of Trustees has provided us with a thorough discussion of the medical evidence and the reason why they chose to rely on Dr. Weems's medical opinion over the other medical opinions. PERS stated:
So we have two back surgeons [Dr. Weems and Dr. Varner] assigning similar percentages of impairment ratings but they are totally opposite each other with regard to limitations and Mr. Dean's physical ability to return to work. And we must also look at this in light of the other physicians now involved, those being Dr. Welch, Dr. Crowder and Dr. Vohra. The most obvious conclusions we are to draw here is that only Dr. Weems has treated Mr. Dean for any length of time. Dr. Varner evaluated Mr. Dean twice and did not do any testing other than maybe a physical exam. He did not perform the back surgery and actually see what was going on in Mr. Dean's back. He did not follow Mr. Dean through a period of post operative healing when there were no outside influences involved. He did not order an MRI performed to look at post operative healing. It appears to us that Dr. Weems is in the best place and with the most information to make a decision as to whether Mr. Dean is able to attempt work, based upon the stability of Mr. Dean's back.
In addition, PERS devalued the opinions of Dr. Crowder, Dr. Vohra, and Dr. Welch since it deemed that they were only evaluations and not treatment over a period of time.
¶ 20. This case is similar to Byrd v. Public Employees' Retirement System, *341 774 So.2d 434 (Miss.2000). There, Byrd claimed she was disabled as the result of an on-the-job back injury. Id. at 436 (¶ 2). Byrd saw a number of different doctors which had "different opinions regarding the severity of her condition, the best method of treatment for her condition, and her chances of recovery." Id. at (¶ 3). Dr. Vohra was one of the doctors who treated Byrd as a private physician. Id. at (¶ 5). He recommended that she complete a Functional Capacity Evaluation administered by Charlene Toney, an occupational therapist. Id. After the evaluation, both Dr. Vohra and Toney opined that Byrd was able to return to work. Id. at (¶¶ 5-6). Another doctor, Dr. Eric Pearson, opined that Byrd's prognosis was poor, regardless of what treatment she received; and it was unlikely that she would be able to return to work. Id. at (¶ 7).
¶ 21. When addressing whether the evidence was sufficient to support PERS' denial of disability, the supreme court said:
Although the assessments of the medical personnel who treated Byrd are in stark contrast from one another, it was the job of PERS to determine which of these assessments to rely on in making its decision. The opinions of Dr. Vohra and Charlene Toney, standing alone, are sufficient to support a finding that Byrd is not permanently disabled. To the contrary, had PERS found Byrd to be permanently disabled, Dr. Pearson's opinion, standing alone, would appear to support such a finding.
Id. at 438 (¶ 15).
¶ 22. Likewise, Dean has received conflicting assessments from different doctors. The opinions of Dr. Weems and Dr. Vohra are sufficient evidence to support a finding that Dean is not disabled, while the opinions of Dr. Varner, Dr. Crowder, and Dr. Welch would provide sufficient evidence to support a finding that Dean was disabled. As mentioned above, PERS decided to place more weight upon the opinion of Dr. Weems since he was the treating physician who saw Dean for several months of treatment. This decision was within the discretion of PERS as the fact-finder. Howard, 905 So.2d at 1287 (¶ 21). Therefore, we find that there was sufficient evidence to support the decision of PERS.
¶ 23. Dean claims it was improper to value Dr. Weems's opinion over Dr. Varner's when it was "Dr. Weems who sent Dean to Dr. Varner, an orthopedist for an `orthopedic evaluation.'" In essence, Dean claims that the referral should invalidate Dr. Weems's release to work without restrictions.
¶ 24. While this might be the case in certain circumstances, it is not the case here. Dr. Weems treated Dean's back injury for a period of six months. Dr. Weems, in his report dated April 5, 1995, stated Dean could return to work since he had essentially reached maximum medical benefit, but he would keep Dean off work for one more month. It was after that additional month, on May 5, 1995, that Dr. Weems released Dean to go back to work as of May 9, 1995. On the same day, he referred him to Dr. Varner for an orthopedic evaluation and to Dr. Atkins for a psychological evaluation. While Dr. Weems did refer Dean to Dr. Varner, it is very important to note that he did not condition his work release on the evaluation by Dr. Varner. Further, Dean was released to return to work without restrictions seven days prior to seeing Dr. Varner, in accordance with the referral. Dr. Weems felt, in his medical opinion, that while Dean may have recurrent pain, he was able to return to work without restrictions.
¶ 25. Dean argues that Dr. Weems implicitly agreed with the restrictions that *342 Dr. Varner placed on Dean. Dean alleges that Dr. Weems continued to treat him after the restrictions were in place. However, the medical records show that Dr. Weems had ceased treating Dean before the restrictions were placed on him. While Dr. Weems referred Dean to Dr. Varner on January 11, 1995, it was only for heel pain in his right foot. Dr. Varner treated that pain, and Dean returned to Dr. Weems's care. Further, Dr. Varner stated in his report that work status was left for Weems's determination. From the medical records before us, Dean did not return to Dr. Varner until Dr. Weems made the second referral on May 5, 1995. It was not until this date that Dr. Weems ended his treatment of Dean. Further, Dr. Varner did not place the restrictions on Dean until June 19, 1995. Therefore, we would be remiss to accept Dean's allegation that Dr. Weems implicitly agreed to Dr. Varner's restrictions. Clearly, the restrictions were placed on Dean more than a month after Dr. Weems had ceased Dean's treatment.

CONCLUSION
¶ 26. The pertinent question before this Court is whether there was sufficient evidence to support the PERS' decision. See Dishmon, 797 So.2d at 892 (¶ 12). We find that there was sufficient evidence through the opinion of Dr. Weems, Dean's treating physician, to support the PERS' finding that Dean was not disabled under the definition of Section 25-11-113. Therefore, the circuit court impermissibly re-weighed the evidence when it reversed the decision of PERS.
¶ 27. For the foregoing reasons, we reverse the judgment of the circuit court and render judgment, reinstating PERS' order denying Dean disability benefits.
¶ 28. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.